Louise R. ELIASON, James T. Eliason, III, Barbara R. Eliason, Kathleen A. Gallo, Xavier Teixido, and Louise R. Eliason In Her Capacity As One of The Trustees of The James T. Eliason, III, Trust, Plaintiffs Below, Appellants,

v.

William P. ENGLEHART, Jr., Warren A. Beh, Jr., James E. Englehart, Frank L. Hewlett, Jr., Charles G. Shoemaker, Joseph H. Shoemaker, and Sarah E. Englehart, Defendants Below, Appellees.

No. 488, 1998.

Supreme Court of Delaware.

Submitted: April 27, 1999.
Decided: July 14, 1999.
Rehearing Denied Aug. 3, 1999.

M. Duncan Grant (argued), Tara L. Lattomus, and Andrea B. Unterberger, of Pepper Hamilton, LLP, Wilmington, for appellants.

Lewis H. Lazarus (argued), and Michael J. Maimone, of Morris, James, Hitchens & Williams, Wilmington, for appellees William P. Englehart, Jr., Warren A. Beh, Jr., James E. Englehart, Frank L. Hewlett, Jr., Charles G. Shoemaker and Joseph H. Shoemaker; and Peter S. Gordon, of Gordon, Fournaris & Mammarella, P.A., Wilmington, for appellee Sarah E. Englehart.

Before HOLLAND and BERGER, JJ., and DEL PESCO, Judge, sitting by designation pursuant to Art. IV, § 12 of the Delaware Constitution and Supreme Court Rules 2 and 4.

PER CURIAM:

In this appeal, we construe the statute governing irrevocable proxies. Specifically, we consider whether a proxy "states that it is irrevocable," as required by statute, where the only mention of the proxy being irrevocable is found in a notarized acknowledgment at the bottom of the document. Because the sole purpose of an acknowledgment is to validate the signature on the document, we hold that it cannot be used to satisfy substantive requirements of the proxy statute. Accordingly, we reverse.

I. Factual and Procedural Background

Brosius–Eliason Co. is a building and materials company whose stock is owned by three families. The Eliason family owns a majority of the 9900 shares outstanding, with James T. Eliason, III, and his sister, Sarah E. Englehart, holding the controlling block (3928 shares and 1260 shares, respectively). The Brosius family owns a total of 3690 shares, and Frank L. Hewlett, Jr. owns the remaining 1062 shares.

On July 31, 1997, James Eliason executed the proxy at issue here, giving his daughter, Louise R. Eliason, the authority to vote his stock. Two weeks later, James and his sister, Sarah, entered into a voting agreement that assured Eliason family control over the company. The agreement provided, among other things, that James and Sarah would: (i) amend the company bylaws to provide for a nine member board of directors; (ii) nominate the directors according to a specified formula and vote to elect them; (iii) grant each other irrevocable proxies to vote their shares in accordance with the agreement; and (iv) refrain from selling or transferring their stock without the prior consent of the other or the transferee's undertaking to abide by the agreement. Immediately after signing the voting agreement, James (acting through Louise) and Sarah executed written consents to: change the size of the board, remove the incumbent board, elect five new board members, and call a special meeting to fill the other four vacancies.

Over the next few months, Louise started asserting her family's control over the company by proposing a buyout of the Brosius family stock and a reorganization of the business. Sarah apparently did not agree with this approach. On February 6, 1998, she joined with the two other families and, by written consent, removed the incumbent directors and replaced them with representatives from each of the three families. Louise responded by filing this action, pursuant to 8 *Del.C.* § 225, seeking a determination of the duly elected directors of Brosius–Eliason Co.

On cross motions for summary judgment, the trial court held that the rightful office holders are those individuals elected in the 1998 written consent. The court reasoned that the consent was effective if Sarah's votes counted toward the majority, and Sarah's votes could be counted if she was not bound by her voting agreement with James. The parties raised several issues with respect to the validity of the voting agreement, but the trial court addressed only one—whether the proxy James gave to Louise was irrevocable. The court held that it was and, since the

proxy predated the voting agreement, James had no power to vote his shares by the time he contracted with Sarah. Therefore, the trial court concluded that the voting agreement failed for lack of consideration.

## II. Discussion

■■■ A proxy is evidence of an agent's authority to vote shares owned by another.[1] To be effective as a proxy, a document must identify the shares that are to be voted by the agent and include some indication of authenticity, such as the stockholder's signature or a facsimile of the signature.[2] Proxies are revocable unless they satisfy the requirements of 8 *Del.C.* § 212(e):

A duly executed proxy shall be irrevocable if it states that it is irrevocable and if, and only as long as, it is coupled with an interest sufficient in law to support an irrevocable power....

The parties agree that the proxy James gave to Louise meets the statutory requirement that it be coupled with an interest. The question is whether it "states that it is irrevocable." The disputed proxy provides, in relevant part:

### PROXY

### KNOW ALL MEN BY THESE PRESENTS:

That James T. Eliason, III, as the record owner of 3,928 shares of the issued and outstanding shares of voting stock of Brosius–Eliason Co., a Delaware corporation ("BEC"), for good and valuable consideration the legal sufficiency of which is hereby acknowledged by the undersigned, do hereby constitute and appoint Louise R. Eliason as attorney and agent for him ... to vote as his proxy (i) at all annual and special meetings of the shareholders of BEC, ... and (ii) on all consents or dissents by shareholders of BEC ... and any other matter, as fully as he could act, giving to said proxy, agent and attorney, full power of substitution and revocation. This proxy shall terminate on July 31, 1999.

Date: 7/31, 1997      /S/ James T. Eliason, III (SEAL)

STATE OF DELAWARE          )
                           ) SS
COUNTY OF NEW CASTLE       )

On this *31* day of July, 1997, before me a Notary Public in and for said County and State, personally appeared James T. Eliason, III known to me to be the person whose name is subscribed to the within Irrevocable Proxy and acknowledged to me that he executed the same.

My Commission Expires:    /S/Notary Public
1–24–01                   NOTARY PUBLIC IN
                          AND FOR SAID COUNTY
                          AND STATE

The word "irrevocable" appears only in the acknowledgment. Thus, the question becomes whether the acknowledgment may be construed to be part of the proxy for purposes of § 212(e).

■■■ The goal of statutory construction is to determine and give effect to legislative intent.[3] If a statute is unambiguous, there is no need for judicial interpretation, and the plain meaning of the statutory language controls.[4] If a statute is ambiguous, it should be construed in a way that will promote its apparent purpose and harmonize with other statutes.[5] Applying these rules of statutory construction, we conclude that § 212(e) requires that the word "irrevocable" appear somewhere in the proxy, but an acknowledgment is not part of the proxy.

1. *Duffy v. Loft, Inc.,* Del.Ch., 151 A. 223, aff'd., Del.Supr., 152 A. 849 (1930).

2. *Parshalle v. Roy,* Del.Ch., 567 A.2d 19 (1989).

3. *Streett v. State,* Del.Supr., 669 A.2d 9 (1995).

4. *Jackson v. Multi–Purpose Crim.Jus.Fac.,* Del. Supr., 700 A.2d 1203 (1997).

5. *E.I. Du Pont De Nemours & Co. v. Clark,* Del.Supr., 88 A.2d 436 (1952); *Hamilton v. State,* Del.Supr., 285 A.2d 807 (1971).

Generally, proxies are revocable. If a proxy is to be irrevocable, § 212(e) requires, among other things, that it state that it is irrevocable. The purpose of this requirement is apparent—to distinguish between revocable and irrevocable proxies and to put interested parties (the stockholder, proxy holder and corporation) on notice that the proxy is irrevocable. The statutory language is simple and direct. A proxy must state that it is irrevocable, which means that the word "irrevocable," or perhaps a synonym, must appear in the proxy.

■■■ The problem is that § 212 does not specify whether an acknowledgment of the stockholder's signature is considered part of the proxy. From our review of acknowledgments, generally, we conclude that it is not. An acknowledgment is a means by which the signature on an instrument may be authenticated.[6] There is no requirement that proxies be acknowledged,[7] but even if there were, "the acknowledgment ordinarily forms no part of the substance of the instrument...."[8] Thus, improperly acknowledged legal instruments are "as valid and effective in law as if each instrument had been correctly acknowledged...."[9] This principle also applies in reverse; a proper acknowledgment does not validate an otherwise invalid instrument.[10] Since an acknowledgment does not affect the substance of the instrument being acknowledged, we conclude that it cannot be used to satisfy the statutory requirement that a proxy state that it is irrevocable.

This conclusion recognizes the restricted function of an acknowledgment and also promotes the statutory goal of providing notice to interested parties. The acknowledgment normally appears after the signature line on an instrument. In this case, the acknowledgment was on the same page as the proxy, but it could have been on the following page. In either event, the location of the acknowledgment, combined with its lack of substantive impact, creates a real risk that the party signing the document will never read it. If the "irrevocable" designation must appear in the proxy, and not just the acknowledgment, that risk and the attendant legal uncertainties are diminished.

## III. Conclusion

Based on the foregoing, we hold that the proxy James gave to his daughter, Louise, failed to satisfy the requirements of § 212(e), and, therefore, is revocable. We reverse the Court of Chancery and remand for further action in accordance with this decision.

6. 29 Del.C. § 4322(a).

7. 8 Del.C. § 212(c).

8. *Howell v. Connecticut Fire Ins. Co.*, Mo. App., 215 Mo.App. 386, 257 S.W. 178, 181 (1924). *See: Potter v. Haley*, Del.Ch., 1993 WL 525513 (1993), *aff'd.* Del.Supr., 670 A.2d 1340 (1995); *Seabrooke v. Garcia*, Ohio App., 7 Ohio App.3d 167, 454 N.E.2d 961 (1982).

9. 25 Del.C. § 132.

10. *Brumfield v. Paul*, La.App., 145 So.2d 46 (1962)(Where one of the parties to a contract allegedly lacked capacity, recitals in acknowledgment do not validate the contract.)