COURT OF CHANCERY
OF THE
STATE OF DELAWARE

JOHN W. NOBLE
VICE CHANCELLOR

417 SOUTH STATE STREET
DOVER, DELAWARE 19901
TELEPHONE: (302) 739-4397
FACSIMILE: (302) 739-6179

December 31, 2014

John W. Paradee, Esquire
Prickett, Jones & Elliott, P.A.
11 North State Street
Dover, DE 19901

Joseph C. Handlon, Esquire
Scott W. Perkins, Esquire
Department of Justice
820 North French Street
Wilmington, DE 19801

Re: *Ridgewood Manor II, Inc. v. The Delaware Manufactured Home Relocation Authority*
C.A. No. 8528-VCN
Date Submitted: July 22, 2014

Dear Counsel:

Plaintiffs, landlords and tenants of manufactured home communities throughout Delaware, filed this action seeking declaratory relief, injunctive relief, and disgorgement of monthly assessments collected under the Manufactured Home Owners and Community Owners Act[1] by Defendants from February 1, 2006,

---

[1] 25 *Del. C.* ch. 70, subch. I.

through April 8, 2014.[2]   The parties have stipulated that there is no dispute of

material fact and have filed cross-motions for summary judgment.  For the reasons

that follow, Plaintiffs' motion for summary judgment is generally denied, except to

the extent that the Court concludes that certain assessments were collected

unlawfully and leaves open the possibility of recovery.

## I.  BACKGROUND

Defendant the Delaware Manufactured Home Relocation Authority (the

"Authority" or "DMHRA") has collected a monthly assessment of $3 per rented

manufactured home lot in Delaware pursuant to a resolution adopted by its board

(the "Board") on February 19, 2004.[3]   The assessments have been deposited in the

Delaware Manufactured Home Relocation Trust Fund (the "Trust Fund"), an

account maintained by Defendant the Division of Revenue of the Delaware

Department of Finance (the "Division of Revenue," and collectively with

---

[2] Verified Class Action Compl. ("Compl." or the "Complaint") ¶¶ A-F.  Plaintiffs appear to have narrowed their request after a legislative amendment of April 8, 2014, discussed *infra*.

[3] Stipulation of Facts ("Stip.") ¶¶ 1, 8 (Dec. 31, 2013).  Collection began as of April 1, 2004.  Landlords and tenants have split the $3 assessment equally.

DMHRA, the "Defendants").[4]  Plaintiffs are landlords and tenants who have paid

the monthly assessments.[5]

The General Assembly established DMHRA in 2003 "to provide financial

assistance to tenants and landlords in manufactured home communities who may

be required to relocate, abandon, or remove manufactured homes under a variety of

circumstances."[6]  This financial assistance comes from the assessments Defendants

collect and hold in the Trust Fund.  The parties do not dispute that, at least before

February 1, 2006, 25 *Del. C.* § 7012(f)(1) gave DMHRA the power to collect and

change the amount of the monthly assessments:

> The board of directors of the Authority shall set a $3.00 monthly
> assessment for deposit in the Trust Fund for each rented lot in a
> manufactured home community.  The board may adjust, eliminate or
> reinstate the assessment, and shall notify landlords and tenants of each
> adjustment, elimination or reinstatement [pursuant to board

---

[4] Stip. ¶ 1.  For convenience, the Court focuses its discussion on collection by
DMHRA, although it acknowledges Plaintiffs' argument that the Division of
Revenue is involved by holding these monies.

[5] *See* Stip. ¶¶ 2-5.  This action seeks relief for a class consisting of landlords and
tenants, but the Court does not address class certification issues here.

[6] Stip. ¶ 1.  Plaintiffs contend that it is difficult for landlords and tenants to obtain
these benefits.  *See* Pls.' Answering Br. in Resp. to Defs.' Mot. for Summ. J.
("Pls.' Answering Br.") 2 & n.2.

regulations]. If the board does not adopt an adjusted assessment on or before January 31, 2006, the board shall eliminate the fee in its entirety.[7]

The Board established the $3 assessment at a meeting on February 19, 2004.[8] At all times relevant to the litigation, the nine-member Board[9] needed a 75% majority of votes to "'adjust, eliminate, or reinstate the Trust Fund assessment.'"[10] The implementing legislation provided that the Authority and the Board may "[s]ue or be sued,"[11] but also granted them immunity from a "civil cause of action of any nature . . . for any act or omission in the performance of powers and duties under this subchapter unless the act or omission complained of was done in bad faith or with gross or wanton negligence."[12]

---

[7] Stip. ¶ 10 (quoting 25 *Del. C.* § 7012(f)(1) as it existed before an April 2014 amendment). The language in brackets is missing from the Stipulation of Facts but appears in Defendants' briefs and the current Delaware Code.

[8] Public notice was given for this meeting. *See* Stipulated Rs. Exs. ("Stip. R.") Ex. A, at DMHRA-1.

[9] Stip. ¶ 9.

[10] Stip. ¶ 11 (quoting 25 *Del. C.* § 7011(c)(3)). An October 11, 2011, amendment of the statute reduced the number of board members from nine to five and required a three of five majority to take these actions. Stip. ¶ 11 & n.2.

[11] 25 *Del. C.* § 7011(d)(1).

[12] 25 *Del. C.* § 7011(b)(3).

DMHRA has consistently collected the $3 assessment. It has also made various expenditures, including relocation benefits and administrative costs.[13] As of January 31, 2006, the Trust Fund reported a balance of $843,057.17.[14] At 1:19 p.m. on the same day, DMHRA's administrative assistant, Leslie Bird, sent an email to the members of the Board asking each to "'respond as a vote wether [sic] you approve the reinstatement of the fee.'"[15] By 2:33 p.m., five members of the Board had voted by email to approve.[16] The last of the nine approvals came in at 5:15 p.m.[17] The parties agree that all nine members of the Board voted in favor of reinstating the fee on January 31, 2006.[18] They also agree that, with respect to the January 31 vote, there was no public notice of a meeting, no public meeting, no record in the form of minutes, and no subsequent notice of the contested Board

---

[13] *See, e.g.,* Pls.' Opening Br. in Supp. of Pls.' Mot. for Summ. J. ("Pls.' Opening Br.") Ex. A, at 4.

[14] Stip. R. Ex. K, at DMHRA-511.

[15] Stip. ¶ 12 (quoting Bird's email). The email is attached at Exhibit D to the Stipulation of Facts.

[16] Stip. ¶ 15.

[17] Stip. ¶ 19.

[18] Stip. ¶ 24 & n.3. Plaintiffs attempt to challenge the evidence of this vote, Pls.' Answering Br. 11, but the Court will abide by the stipulation.

actions to any landlords or tenants.[19]  The extent of deliberation involved in the

Board's vote is unclear.  Meeting minutes show that the Board had hired an

actuarial consultant in the months before the vote.[20]  Yet while the Board's Actuary

Committee had "no report" at the January 11, 2006, meeting,[21] the Board

considered holding "an informal meeting to discuss increasing the collected fee to

---

[19] Stip. ¶¶ 20-23.

[20] *See* Stip. R. Ex. J, at DMHRA-13-14 (noting suggested changes in a contract with TowersPerrin and concern that "maximum payout amounts could change over time because fewer relocations means a higher cap rate"); DMHRA-25 ("[Actuary] Committee Chairman Bill Reed reported that he has spoken with a professor at the University of Delaware regarding the actuarial analysis.  Mr. Reed wants to meet with the other members of the committee . . . before presenting a report to the Authority."); DMHRA-26 (indicating distribution of a Trust Fund account summary, review of a financial report, and review of benefit requests); DMHRA-40-41 (recording a vote for an actuarial consultant); DMHRA-44 (indicating approval of a letter agreement to hire the actuarial consultant); DMHRA-51-52 (reflecting concerns with the actuarial consultant's report and contact with a second professional for an independent report); DMHRA-55 (noting a request for feedback on the actuarial consultant's revised report and that "payment should be withheld until such a time the Board feels the [actuarial consultant's] work has been satisfactorily completed"); DMHRA-58 ("[The actuarial consultant] was present to answer questions regarding his report.").

[21] *Id.* at DMHRA-60 ("There was no report of the Actuary Committee.").

$5 or $6 over time" at its meeting held shortly after the email vote.[22]  The Board

officially mustered the requisite votes to recommend increasing the assessment to

$4 at a June 2008 meeting,[23] but neither the General Assembly nor the Board has

actually changed the assessment from the original $3 amount.[24]

The Trust Fund had a balance of $6,093,948.57 and had paid out

$572,714.59 in relocation benefits and $940,615.98 in administration and overhead

costs as of October 2013.[25]  Financial summaries indicate that no relocation

benefits have been paid since 2009,[26] but the Trust Fund provides insurance value

and has been authorized to cover some arbitration fees since June 2013.[27]  In July

2013, the General Assembly voted to (1) raise the cap on the Trust Fund from $10

---

[22] The directors planned to hold the informal meeting in late March, after which they hoped to finalize a recommendation by May 31 and subsequently schedule a public hearing "with proper notice."  *Id.* at DMHRA-62.

[23] *Id.* at DMHRA-156-57 (June 10, 2008 minutes).

[24] *See, e.g.*, Pls.' Opening Br. 7; Defs.' Answering Br. in Opp'n to Pls.' Mot. for Summ. J. ("Defs.' Answering Br.") 12.

[25] Pls.' Opening Br. Ex. A, at 1.

[26] *See* Stip. R. Ex. K, at DMHRA-1216, 1502, 1773; Pls.' Opening Br. Ex. A, at 1.

[27] The provision about arbitration payments can be found at 25 *Del. C.* § 7043(c) and is currently in effect.  *See* Supplemental Transmittal Aff. of Scott W. Perkins ("Supplemental Perkins Aff.") Ex. E, at 5-6 (discussing arbitration invoices).

million to $15 million and (2) extend the Trust Fund's term from July 1, 2014, to July 1, 2019.[28] Pursuant to an April 8, 2014, amendment, 25 *Del. C.* § 7012(f)(1)'s final sentence (regarding elimination of the fee absent an adjusted assessment) was removed.[29] The synopsis of the amending bill states that the General Assembly removed the sentence because "[t]he Authority having complied with the requirement, the sentence is no longer relevant."[30]

Plaintiffs filed this action on May 6, 2013. There is no evidence that Plaintiffs complained about the assessments before then.[31] To promote efficient resolution, the parties agreed "to bifurcate the substantive merits of the claims stated by the Plaintiffs' Complaint . . . from the issues of class certification . . . and what remedies are available to the class," if applicable.[32] The parties have

---

[28] Transmittal Aff. of Scott W. Perkins ("Perkins Aff.") Ex. D (showing amendments to 25 *Del. C.* § 7012, approved July 31, 2013).

[29] Supplemental Perkins Aff. Ex. F (showing the amendment and approval date). Plaintiffs do not ask for the assessments collected after this date, presumably because the legislation authorized collection of those assessments.

[30] *Id.* Ex. G (synopsis of House Bill 233). The synopsis presumably refers to the Board's voting effort of January 31, 2006.

[31] Stip. ¶ 25.

[32] Stipulation and Order ¶ 1 (Nov. 13, 2013).

submitted a stipulated record and cross-motions for summary judgment on the merits of the claims. In addition, Plaintiffs have filed a motion in limine to exclude certain evidence on the grounds of relevance, confusion, and undue prejudice.[33]

## II. CONTENTIONS

Plaintiffs contend that Defendants' continued collection of the monthly assessments from February 1, 2006, to April 8, 2014, fell beyond their statutory mandate and that the money should be returned.[34] They argue that the Board acted unlawfully, not only by maintaining the dollar amount of the assessment without meaningful analysis, but also by disregarding the Freedom of Information Act ("FOIA") requirements for public bodies and the requirement for notice of fee-related actions in 25 *Del. C.* § 7012(f)(1). They read the implementing legislation to mean that DMHRA would lose the power to collect any assessments in the

---

[33] Specifically, Plaintiffs object to "correspondence from Glasgow Court Enterprises . . . relating to a potential, not actual, change-in-use" of a portion of its manufactured housing community, invoking Delaware Uniform Rules of Evidence, Rules 401, 402, and 403. Pls.' Mot. in Limine ¶¶ 1-3.

[34] Pls.' Answering Br. 23-24.

future[35] unless the Board changed the monthly assessment to an amount other than

$3 before February 1, 2006.[36]   They ask for strict construction of DMHRA's

statutory authority and claim that theirs is the clear and unambiguous

interpretation, giving effect to all parts of the statute and its mandatory language.

They further allege unjust enrichment and seek a constructive trust for the disputed

amounts collected.[37]

Defendants, on the other hand, argue that the Board complied with 25 *Del.*

*C.* § 7012(f)(1) on January 31, 2006, because the Board made a reasoned decision

to maintain the level of the assessment under the then-present circumstances.[38]

They explain that their interpretation of the requirement to adopt an adjusted

assessment (and the consequences of failing to do so) is correct by invoking the

plain language of the statute, legislative intent, a holistic reading, and subsequent

---

[35] *Id.* at 17-20.

[36] Pls.' Opening Br. 13.

[37] *Id.* at 16.  The Court will not decide the issue of remedies at this time.

[38] Defs.' Answering Br. 17-18.

legislative acts.[39]  They also argue that Plaintiffs' real complaint lies in the acts (or

lack thereof) taken on or around January 31, 2006.[40]  As such, immunity, the three-

year statute of limitations prescribed by 10 *Del C.* § 8106(a), the six-month statute

of limitations for FOIA violations set by 29 *Del. C.* § 10005(a), and laches bar

Plaintiffs' claims.[41]

In response to Defendants' affirmative defenses of immunity and statutes of

limitations,[42] Plaintiffs attempt to frame the dispute as one about continuing,

unlawful collections.[43]  Plaintiffs assert that immunity does not prevent recovery

---

[39] Defs.' Opening Br. in Supp. of Their Mot. for Summ. J. ("Defs.' Opening Br.")
18-22.

[40] Defs.' Reply Br. in Further Supp. of Their Mot. for Summ. J. ("Defs.' Reply
Br.") 21 n.8 ("To the extent a harm occurred, it happened within a reasonable time
after January 31, 2006, when the Authority allegedly failed to eliminate the
assessment.").

[41] While their arguments focus on DMHRA, Defendants note that the Division of
Revenue should not be liable, either, as it only holds the deposited funds.  Defs.'
Opening Br. 12 n.4.

[42] Defendants observe that Plaintiffs do not address the laches defense.  Defs.'
Reply Br. 17.  Perhaps the laches arguments fall within the realm of Plaintiffs'
contentions of running accounts and continuing collection, but the Court does not
reach this issue.  *See infra* note 82.

[43] *See, e.g.*, Pls.' Answering Br. 23-24 ("The 'act or omission' for which the
Plaintiffs seek relief here is not whatever action the Authority's Board may have

because they are only asking for disgorgement rather than seeking to hold DMHRA and its Board liable for damages, Defendants were not acting within their authority granted by the statute, and the Board acted with bad faith or gross or wanton negligence.[44] Plaintiffs further explain that their seven-year delay is not a bar because the violation is continued unlawful collection,[45] they more recently became aware of the injustices in collection and use of the assessments,[46] they cannot be penalized for the Board's concealment of its wrongdoing,[47] and a mutual running account is not subject to the three-year statute of limitations.[48] "At the very worst," Plaintiffs ask the Court to grant relief extending back to three years before the date the Complaint was filed.[49]

---

taken or failed to take on January 31, 2006, but rather, the Defendants' continuing collection of Trust Fund assessments ***after*** January 31, 2006.").

[44] *Id.* at 22-28.

[45] *See* Pls.' Reply Br. in Supp. of Their Mot. for Summ. J. ("Pls.' Reply Br.") 17.

[46] Pls.' Answering Br. 8.

[47] *Id.* at 29-30.

[48] *See id.* at 31 (invoking 10 *Del. C.* § 8108).

[49] *Id.* at 32 n.60.

## III. ANALYSIS

A. *The Summary Judgment Standard*

To succeed on a motion for summary judgment, the moving party bears the burden of showing, through "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, . . . that there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law."[50] The Court views the evidence, presented in compliance with Rule 56, in the light most favorable to the non-moving party.[51] When the parties agree to present cross-motions for summary judgment based on an absence of dispute over any fact material to either motion,[52] "the Court shall deem the motions

---

[50] Ct. Ch. R. 56(c).

[51] *Graven v. Lucero*, 2013 WL 6797566, at *2 (Del. Ch. Dec. 20, 2013).

[52] While the parties disagree on various facts and inferences, both maintain that the matter can be resolved on summary judgment. *See, e.g.*, Pls.' Reply Br. 8 ("The Plaintiffs respectfully submit that . . . there is no genuine issue as to any material fact . . . ."); Defs.' Reply Br. 9 ("Plaintiffs do not contend that there are any disputes of material fact that would preclude the Court from ruling on Defendants' Motion for Summary Judgment.").

to be the equivalent of a stipulation for decision on the merits based on the record

submitted with the motions."[53]

B. *Statutory Construction and the Nature of the Alleged Wrong*

The threshold question for the Court is what 25 *Del. C.* § 7012(f)(1) required

of DMHRA and the Board. Plaintiffs assert that Defendants acted outside their

powers because they continued to collect assessments after the Board did not

adjust or eliminate the assessment (or provide relevant notice of any adjusted

assessment) as required under a plain-meaning interpretation of the statute and

supported by a debate in the House of Representatives.[54] Defendants emphasize

legislative intent and reasonableness in support of their theory that the Board did

---

[53] Ct. Ch. R. 56(h).

[54] *See* Pls.' Reply Br. Ex. A (excerpted transcript of the May 8, 2003, House Floor Debate). The debate suggests that the General Assembly intended a literal reading of the adjustment requirement:

> Representative Greg Lavelle: "So they could adjust it to $2.99, and it could live on?"
> Representative Donna Stone: "Yes."
> Representative Greg Lavelle: "But if they leave it at $3.00 it goes away? You're forcing them, essentially this is an important issue, which I don't deny it is, you're forcing them to adjust it."
> Representative Donna Stone: "Yes."

*Id.* at 2.

adopt an adjusted assessment on January 31, 2006 (or at least could have lawfully continued to collect future assessments). The Court's job is to "determine and give effect to legislative intent" when interpreting statutes.[55] Under Delaware law, "[i]t is well settled that statutory language is to be given its plain meaning and that when a statute is clear and unambiguous there is no need for statutory interpretation."[56] If there is ambiguity in the text itself, however, the Court interprets the statute in a manner "that will promote its apparent purpose and harmonize with other statutes."[57]

Here, the Court's statutory construction exercise begins and ends with a plain-meaning analysis. The statute stated that "[i]f the board does not adopt an adjusted assessment . . . , the board shall eliminate the fee." The Court finds the language clear for the purposes of this dispute.[58] Defendants observe that "[h]ad

---

[55] *Eliason v. Englehart*, 733 A.2d 944, 946 (Del. 1999).

[56] *See State v. Skinner*, 632 A.2d 82, 85 (Del. 1993); *see also* 2A Norman Singer & Shambie Singer, *Sutherland Statutory Construction* § 45:2 (7th ed. 2014).

[57] *Eliason*, 733 A.2d at 946.

[58] Plaintiffs' motion in limine directed at excluding evidence about a potential change in use of part of a manufactured home community, thus, is mooted to the extent that the Court interprets the statute by its plain meaning and does not reach

the General Assembly intended to divest the Authority of the power to take some act, it knew how to do so in clear and unequivocal language."[59]  The Court agrees. The statute was not self-cancelling and did not strip the Board of continued power to act.  In fact, the Board had a duty to eliminate the fee (in other words, act) if it did not adopt an adjusted assessment before or on January 31.  Failure to do both would constitute a breach of duty by the Board and result in unlawful action by Defendants.[60]

The next question is whether the Board complied with its statutory mandate. Plaintiffs argue that the Board failed to adopt an adjusted assessment because it did not (1) change or minimally evaluate the assessment amount, (2) officially act pursuant to FOIA, and (3) send notice of any adjusted assessment to affected

---

the issue of sufficiency of benefits.  Correspondence from 2014 indicating that a specific entity intends to make changes triggering eligibility for benefits does not factor into the Court's analysis of the Board's statutory responsibilities or unjust enrichment.

[59] Defs.' Answering Br. 20.

[60] This plain language construction is not inconsistent with the language in 25 *Del. C.* § 7001(a) that "[t]his subchapter must be liberally construed and applied to promote its underlying purposes and policies."  Furthermore, the Court does not look to recent legislative acts affecting the Trust Fund and the Board to construe the statute as it existed during the time of the contested actions.

parties. The Board could adopt an adjusted assessment by a 75% majority vote according to 25 *Del. C.* § 7011(c)(3). Implicit in this provision is that directors must consider their positions and come to an agreement representing the official decision of the Board.[61] Furthermore, DMHRA is a public body subject to FOIA.[62] Thus, generally speaking, the Board needs to hold public meetings,[63] for which advance notice is given to the public[64] and minutes are maintained.[65]

---

[61] *Cf. Liberis v Europa Cruises Corp.*, 1996 WL 73567, at *6 (Del. Ch. Feb. 8, 1996) ("[P]olling board members does not constitute a valid meeting or effective corporate action."), *supplemented*, 1997 33177194 (Del. Ch. Aug. 20, 1997), *aff'd*, 702 A.2d 926 (Del. 1997) (TABLE); *Cellular Info. Sys., Inc. v. Broz*, 663 A.2d 1180, 1186 (Del. Ch. 1995) ("[I]t is an old rule that boards may act with legal effect only at duly convened meetings at which a quorum is present." (citing Robert C. Clark, *Corporate Law* 110-12 (1986))), *rev'd on other grounds*, 673 A.2d 148 (Del. 1996).

[62] *See* 25 *Del. C.* § 7011(b)(4) ("Meetings of the board of directors of the Authority are subject to the provisions of the Freedom of Information Act, Chapter 100 of Title 29.").

[63] *See* 29 *Del. C.* § 10004 (requiring that, excluding certain statutory exceptions, "every meeting of all public bodies . . . be open to the public"); *see also* 29 *Del. C.* § 10001 ("It is vital in a democratic society that public business be performed in an open and public manner so that our citizens shall have the opportunity to observe the performance of public officials and to monitor the decisions that are made by such officials . . . .").

[64] 29 *Del. C.* § 10004(e).

[65] 29 *Del. C.* § 10004(f).

The parties do not dispute that FOIA applies to meetings of the Board and that the Board did not hold a formal public meeting on January 31, 2006. However, FOIA claims are barred by a six-month statute of limitations, and the Court cannot void the Board's actions on those grounds.[66] Yet even independently of FOIA, the Board did not meet the statutory mandate to adopt an adjusted assessment. The Court does not decide whether the Board needed to gather physically and vote,[67] but it observes that there was no meaningful opportunity for the members of the Board to exchange opinions on the specific topic of whether each "approve[d] the reinstatement of the fee" prior to the individual votes. Defendants offer no basis to conclude that the unanimous email vote met the requirements for a meeting and board act other than the unavailing assertion that "the Authority repeatedly and extensively considered the issue, in public, and with

---

[66] *See* 29 *Del. C.* § 10005(a).

[67] *See* 25 *Del. C.* § 7011(b)(4) ("All meetings must be conducted at a central location in the State, unless agreed to for a given meeting by at least 3 of the 5 board members."). As of January 2006, the statute required agreement by 75% of the members.

the assistance of appropriate experts" before that day.[68]  Thus, the Board did not

effectively act to adopt an adjusted assessment on or before January 31, 2006.[69]

Whether the statutory language required the Board to change the assessment to an

amount other than $3 or merely to adopt an assessment appropriate to the

circumstances is inconsequential.  Plaintiffs have shown that the Board did

neither.[70]

There is also no evidence that the Board officially acted to eliminate the $3

assessment on or around February 1, 2006.[71]  The General Assembly could have

drafted 25 *Del. C.* § 7012(f)(1) to say that the power to collect assessments would

automatically end absent an adjustment on or before January 31, but it did not.

Instead, the statute required the Board to eliminate the assessment.  The underlying

wrong may have been the Board's breach of duty by failing to eliminate the

---

[68] Defs.' Reply Br. 5.

[69] Evidence of deliberation after January 31 is not helpful in assessing the Board's actions through this date.

[70] Accordingly, the Court need not reach the arguments about lack of subsequent notice.

[71] It follows that there is no evidence that the Board officially reinstated an eliminated assessment.

assessment shortly after the statutory deadline, but each subsequent collection without Board action to eliminate the fee separately violated 25 *Del. C.* § 7012(f)(1). Plaintiffs have thus shown that Defendants did not rightfully collect the assessments between February 1, 2006, and April 8, 2014.

C. *Affirmative Defenses*

Because the Board did not perform the acts with which it was charged by statute, the next question for the Court is whether any of Defendants' affirmative defenses bars Plaintiffs' recovery. Defendants focus on the affirmative defenses of immunity, statutes of limitations, and laches in their briefs.[72]

Defendants first contend that Plaintiffs cannot recover any damages because this is a civil suit against DMHRA for acts within the scope of the Board's duties, and Defendants have the benefit of statutory immunity. While DMHRA and its board may be sued under 25 *Del. C.* § 7011(d)(1), Subsection (b)(3) protects them from civil liability and civil causes of action "of any nature . . . for any act or

---

[72] Defendants raised additional affirmative defenses in their answer to the Complaint, but did not focus on these defenses in their briefing on the pending motion.

omission in the performance of powers and duties under this subchapter unless the act or omission complained of was done in bad faith or with gross or wanton negligence."[73] Bad faith, analogizing from the corporate law context, includes "not only an intent to harm but also intentional dereliction of duty."[74] Gross negligence requires "'an extreme departure from the ordinary standard of care,'"[75] and wanton behavior requires "'conscious indifference' or [an] 'I-don't-care' attitude."[76]

Plaintiffs, in their answering brief, explain that immunity does not apply because (1) this is an action seeking disgorgement of Plaintiffs' money to Plaintiffs rather than seeking to hold the Authority or the Board liable for damages, (2) Defendants' continued collection was not "in the performance of powers and duties" under the statute, and (3) the Board at least knowingly violated its statutory

---

[73] 25 *Del. C.* § 7011(b)(3). Plaintiffs observe that 25 *Del. C.* § 7011(b)(3) does not give the Division of Revenue immunity, Pls.' Answering Br. 22 n.39, but the Court will not require the Division of Revenue to disgorge monies that it finds no basis to require DMHRA to return.

[74] *Lyondell Chem. Co. v. Ryan*, 970 A.2d 235, 240 (Del. 2009).

[75] *Browne v. Robb*, 583 A.2d 949, 953 (Del. 1990) (quoting W. Prosser, *Handbook of the Law of Torts* 150 (2d ed. 1955)).

[76] *Foster v. Shropshire*, 375 A.2d 458, 461 (Del. 1977) (citing *McHugh v. Brown*, 125 A.2d 583, 586 (Del. 1956)).

mandate by arranging a hasty email vote and withholding subsequent notice from Plaintiffs.[77] To begin, the statutory grant of immunity is worded broadly. The Court, therefore, cannot meaningfully separate a suit seeking return of monies collected by DMHRA and one seeking recovery against DMHRA for illegal assessments, both of which would be paid from the Trust Fund pool.[78] In other words, this is at heart a civil cause of action against DMHRA to recover money.

---

[77] *See* Pls.' Answering Br. 22-28. Defendants emphasize that Plaintiffs failed to address the immunity arguments in an amended complaint, Defs.' Opening Br. 13 n.5, or even their opening brief. Defs.' Answering Br. 15 & n.5 (observing that "[t]he words 'bad,' 'faith,' 'gross,' 'wanton' or 'negligence' do not appear in Plaintiffs' Opening Brief"). Plaintiffs' responses might not have been prompt, but Defendants should have known that such answers were necessary, and the Court considered them at oral argument.

[78] This is not a case of a plaintiff who seeks return of her own property from an account holding that property for her in trust. *Cf. Taylor v. Westly*, 402 F.3d 924, 932 (9th Cir. 2005) ("The State of California's sovereign immunity applies to the state's money. Money that the state holds in custody for the benefit of private individuals is not the state's money, any more than towed cars are the state's cars."). While 25 *Del. C.* § 7012 collects money for the class and requires its return, the money is being held in state coffers primarily for public use. No individual is entitled to the precise amount that she contributed to the trust fund, and the likelihood of such matching is extremely low. *See* 25 *Del. C.* § 7012(e) (distributing the funds, "[i]f the Trust Fund ceases to exist," to landlords and tenants who have rented or occupied qualifying lots "for at least the 12 months immediately prior to the time of the dissolution").

Secondly, as discussed above, the Board violated its duties through an (ongoing) failure to eliminate the assessment—an omission in the performance of its statutory duties. Because the assessments were not self-eliminating, Defendants were technically acting within their powers under the law by continuing to collect them.

Plaintiffs lastly contend that Defendants' conduct demonstrated bad faith or gross or wanton negligence. Generally speaking, the record shows that the members of the Board, serving without pay[79] and holding regular meetings before January 31, 2006,[80] attempted to comply (and appear to have believed that they had complied) with their duties by responding promptly to Leslie Bird's correspondence.[81] They were mistaken, but the record does not contain evidence of their improper motives or extreme lack of care in so believing—at least until Plaintiffs filed the Complaint. Once the Complaint focused Defendants' attention on deficiencies in the Board's conduct, the alleged shortcomings might have been

---

[79] 25 *Del. C.* § 7011(b)(2).

[80] *See, e.g.,* Stip. R. Ex. J, at DMHRA-51, 55, 58, 60.

[81] This does not appear to be the first time email votes occurred. *See id.* at DMHRA 46-48. Additionally, the Court does not find that the Board knowingly or intentionally concealed information and records related to the January 31, 2006 vote.

so clear that continuing to collect the assessment in normal course qualified as conscious indifference. In fact, because immunity generally applies to bar recovery of damages from Defendants, Plaintiffs' primary recourse was to file suit to compel the Board to eliminate the assessment. However, the parties did not anticipate that the case would evolve in this manner and did not address this line of reasoning in their briefs. The Court did not raise the potential difference between the pre- and post-filing periods during oral argument, either. The parties should address the issue to make briefing complete, and the Court declines to resolve the immunity defense without providing the parties fair opportunity to present their arguments.[82]

---

[82] Because immunity is potentially dispositive, the Court does not analyze the remaining affirmative defenses of laches and the three-year statute of limitations (including arguments related to a February 19, 2014, mandatory injunction order, *Del. Manufactured Home Relocation Auth. v. N. Chesapeake Mgmt., LLC*, C.A. No. 8449 (Del. Ch. Feb. 19, 2014) (ORDER)) at this point.

D. *Unjust Enrichment*

Plaintiffs assert that DMHRA has been unjustly enriched by collecting assessments unlawfully and using them to fund administrative expenses. Defendants argue that Plaintiffs have not established the elements for an unjust enrichment claim, for one because the assessments are held in trust for Plaintiffs' benefit.[83] To establish a claim for unjust enrichment, one must show "(1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and impoverishment, (4) the absence of justification, and (5) the absence of a remedy provided by law."[84] With respect to the first prong, Plaintiffs allege that the Authority has been enriched by collecting more than it can legitimately (and actually does) spend to benefit landlords and tenants.[85] However, even if the Authority's financial reports paint a somewhat bleak picture, the General Assembly created the Trust Fund to assist landlords and tenants; the money in the

---

[83] *See, e.g.*, Defs.' Answering Br. 27. Plaintiffs do not explain how they meet each element until their Reply Brief. *Compare* Pls.' Reply Br. 19-22, *with* Pls.' Opening Br. 15-16, *and* Pls.' Answering Br. 23 n.40, 31 n.59. The Court includes this analysis for thoroughness.

[84] *Nemec v. Shrader*, 991 A.2d 1120, 1130 (Del. 2010).

[85] Pls.' Reply Br. 20-21.

Trust Fund ultimately will be returned to landlords and tenants as classes (or support the seemingly inevitable cost of administration);[86] and Plaintiffs have not shown evidence of abusive spending. Thus, Defendants have not been unjustly enriched.

## IV. CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment is granted except for the possibility that Plaintiffs are entitled to some measure of recovery for the assessments collected between the date they filed the Complaint and April 8, 2014. Plaintiffs' motion for summary judgment is granted as to the failure of the Board "to adopt an adjusted assessment on or before January 31, 2006," or eliminate the fee, but it is otherwise denied.

**IT IS SO ORDERED.**

Very truly yours,

*/s/ John W. Noble*

JWN/cap
cc: Register in Chancery-K

---

[86] 25 *Del. C.* § 7012(e).