IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| DIVISION OF FAMILY SERVICES, | § No. 643, 2014 |
| | § |
| Petitioner Below, | § |
| Appellant, | § Court Below—Family Court |
| | § of the State of Delaware |
| v. | § in and for Kent County, |
| | § |
| MATTHEW JAMES, SR.,[1] | § File No. CK14-01972 |
| | § Petition No. 14-16486 |
| Respondent Below, | § |
| Appellee. | § |

Submitted: August 24, 2015
Decided: November 16, 2015

Before **VALIHURA**, **VAUGHN**, and **SEITZ**, Justices.

## ORDER

This 16th day of November 2015, upon consideration of the appellant's opening brief and supplemental memorandum and the record below,[2] it appears to the Court that:

(1)    The appellant, the Division of Family Services ("DFS"), filed this appeal from a Family Court decision accepting the order of a Family Court Commissioner and dismissing DFS' petition for an Order of Protection from Abuse ("PFA order").    On appeal, DFS contends that the Family Court erred in concluding that the termination of the Father's parental rights over four of his

---

[1] The Court previously assigned pseudonyms to the parties under Supreme Court Rule 7(d).

[2] The appellee, Matthew James, Sr. ("the Father"), has not filed anything in this appeal.

children ("the Children") meant that the Father and the Children did not have a relationship within the classes of relationships protected by the PFA statute. After careful consideration of the briefs and the record below, we hold that the Family Court erred in concluding that the termination of the Father's parental rights meant that the Father and the Children did not have a relationship within the classes of relationships protected by the PFA statute. Accordingly, we reverse the Family Court's judgment and remand this matter for the Family Court to determine whether DFS, on behalf of the Children, can show the Father perpetrated abuse against the Children.

(2)    In November 2013, the Family Court terminated the Father's parental rights in the Children and vested full custodial rights in DFS. The Family Court concluded that DFS had established by clear and convincing evidence that grounds for termination existed and that termination was in the Children's best interests. On appeal, this Court affirmed the judgment of the Family Court.[3]

(3)    On June 23, 2014, DFS, on behalf of the Children, filed a petition for a PFA order against the Father. On June 30, 2014, DFS sought an emergency *ex parte* PFA order, alleging that the Father was harassing the Children and disrupting their lives. The Family Court issued a temporary PFA order.

---

[3] *January v. Division of Family Services*, 2014 WL 1713085 (Del. Apr. 28, 2014).

2

(4) On July 8, 2014, a hearing was held on DFS' petition for a PFA order. The Family Court Commissioner determined as a threshold matter that the termination of the Father's parental rights meant that the Father and Children did not fall within the protected classes covered by 10 *Del. C.* § 1041(2) because they were not within the definition of family under 10 *Del. C.* § 901(12). Based on this conclusion, the Family Court dismissed DFS' petition for a PFA order. The Family Court Commissioner did not address whether the Father's actions constituted abuse under 10 *Del. C.* § 1041(1).

(5) DFS requested review of the Family Court Commissioner's decision. In a decision dated October 20, 2014, the Family Court found no merit to DFS' objections and accepted the Family Court Commissioner's order dismissing DFS' petition for a PFA order. The Family Court held that: (i) the definition of family under Section 901(12) was ambiguous because reasonable minds could differ on whether the definition included the relationship of a child and a parent whose parent's rights over the child had been terminated; and (ii) based upon a review of language in other statutes and two of this Court's decisions as well as the "absurd" consequences of including relationships where parental rights have been terminated within the definition of family, the General Assembly did not intend the

3

definition of family to include a child and an individual who previously held parental rights over the child.[4] This appeal followed.

(6) On appeal, DFS argues that the definition of family under 10 *Del. C.* § 901(12) is unambiguous and includes blood relationships like the one between the Father and the Children, regardless of whether the Father's parental rights were terminated. We review questions of statutory interpretation *de novo*.[5] "The goal of statutory construction is to determine and give effect to legislative intent."[6] When the unambiguous language of the statute clearly reflects the intent of the legislature, the statutory language controls.[7] If the statute is determined to be unambiguous, "there is no need for judicial interpretation, and the plain meaning of the statutory language controls."[8] "A statute is ambiguous 'if it is reasonably susceptible of different constructions or interpretations' or 'if a literal reading of the statute would lead to an unreasonable or absurd result not contemplated by the legislature.'"[9]

(7) We begin with the language of the PFA statute. Under the PFA statute, the Family Court may issue a protective order to restrain the respondent from committing domestic violence against the petitioner or a person in whose

---

[4] *Div. of Family Servs. v. James*, No. CK14-01972, at 8 (Del. Fam. Ct. Oct. 20, 2014).
[5] *Smith v. Guest*, 16 A.3d 920, 935 (Del. 2011).
[6] *Eliason v. Englehart*, 733 A.2d 944, 946 (Del. 1999).
[7] *Spielberg v. State*, 558 A.2d 291, 293 (Del. 1989)
[8] *Eliason*, 733 A.2d at 946.
[9] *LeVan v. Independence Mall, Inc.*, 940 A.2d 929, 933 (Del. 2007) (quoting *Newtowne Vill. Serv. Corp. v. Newtowne Rd. Dev. Co.*, 772 A.2d 172, 175 (Del. 2001)).

4

interest a petition is brought.[10] At the time DFS filed the petition for a PFA order, domestic violence was defined as:

> abuse perpetrated by 1 member against another member of the following protected classes:
>
> a. Family, as that term is defined in § 901(12) of this title, regardless, however, of state of residence of the parties; or....[11]

Under Section 901(12),

> "Family" means husband and wife; a man and woman cohabiting in a home in which there is a child of either or both; custodian and child; or any group of persons related by blood or marriage who are residing in 1 home under 1 head or where 1 is related to the other by any of the following degrees of relationship, both parties being residents of this State:
>
> a.  Mother;
>
> b.  Father;
>
> c.  Mother-in-law;
>
> d.  Father-in-law;
>
> e.  Brother;
>
> f.  Sister;
>
> g.  Brother-in-law;
>
> h.  Sister-in-law;
>
> i.  Son;
>
> j.  Daughter;
>
> k. Son-in-law
>
> l. Daughter-in-law;
>
> m. Grandfather;
>
> n. Grandmother;
>
> o. Grandson;
>
> p. Granddaughter;
>
> q. Stepfather;
>
> r. Stepmother;
>
> s. Stepson;
>
> t. Stepdaughter.
>
> The relationships referred to in this definition include blood relationships without regard to legitimacy and relationships by adoption.[12]

---

[10] 10 *Del. C.* § 1041(4)(2011).

[11] 10 *Del. C.* § 1041(2)(a).

[12] 10 *Del. C.* § 901(12)(2014).

(8)     On July 28, 2015, the definition of domestic abuse was amended to include the language bolded below:

> (2) "Domestic violence" means abuse perpetrated by 1 member against another member of the following protected classes:
>
> a. Family, as that term is defined in § 901(12) of this title, regardless, however, of state of residence of the parties, **or whether parental rights have been terminated**; or....[13]

According to the synopsis, "[t]his amendment clarifies that regardless of whether parental rights have been terminated, a petition for protection for abuse may be filed on behalf of a child against a former parent whose conduct constitutes abuse."[14] We asked for supplemental submissions in light of this amendment. In its supplemental submission, the State argues that the use of the term "clarifies" in the synopsis means the General Assembly intended for the amendment to have reotroactive effect. It is not necessary for us to reach this argument.

(9)     Having carefully considered the relevant statutory language at the time of the State's PFA petition, the State's submissions, and the thoughtful analysis of the Family Court, we conclude that the Family Court erred in finding it was ambiguous whether the definition of family under Section 901(12) includes a father and children where the father's parental rights over the children have been terminated. The degrees of relationship listed in Section 901(12) include "father,"

---

[13] 10 *Del. C.* § 1041(2)(a)(2015)(emphasis added).
[14] H.B. No. 132, 148th Gen. Assem. (Del. 2015).

6

"son," and "daughter." It is undisputed in this case that the Father is the biological father of the Children.

(10) The term "father" is not defined in Chapter 9 or Title 10, but is defined in Chapter 11 of Title 13, which governs the termination of parental rights, as "the biological or adoptive male parent of the child."[15] The Father's relationship to the Children would fall within this definition. The Father's relationship to the Children would also fall within dictionary definitions of "father" such as a "man in relation to his natural child or children,"[16] "a male parent,"[17] and "he by whom a child is begotten."[18]

(11) Most importantly, the plain language of Section 901(12) includes "blood relationships" like the one between the Father and the Children. Section 901(12) expressly provides that "[t]he relationships referred to in this definition include blood relationships without regard to legitimacy and relationships by adoption." There is no exclusion of "blood relationships" where parental rights have been terminated. The termination of Father's parental rights terminated "all of the rights, duties, privileges and obligations recognized by law between"[19] the Father and the Children, but did not terminate the fact that the Father and the

---

[15] 13 *Del. C.* § 1101(6)(2013).

[16] Oxford Online Dictionary, http://www.oxforddictionaries.com/us/definition/american_english /father (last visited October 22, 2015).

[17] Merriam-Webster, http://www.merriam-webster.com/dictionary/father (last visited October 22, 2015).

[18] The Law Dictionary, http://thelawdictionary.org/father/ (last visited October 22, 2015).

[19] 13 *Del. C.* § 1113(a).

7

Children are related by blood.[20] The plain language of Section 901(12) includes the Father and the Children.

(12) Given the express reference to "blood relationships" in the definition of "family" under Section 901(12), it is not reasonable to interpret the term "father" as excluding a biological father whose parental rights were terminated. This literal interpretation of Section 901(12) does not produce unreasonable or absurd results as the Family Court suggests. Termination of a person's parental rights over a child will still prevent that person from asserting their parental rights over the child.[21] It is more unreasonable to conclude that the General Assembly intended for children of parents whose parental rights were terminated to receive less protection from abuse than children of parents whose parental rights have not been terminated. Accordingly, the Family Court erred in finding it was ambiguous whether the definition of family under Section 901(12) includes a father and children where the father's parental rights over the children have been terminated. The definition of family under Section 901(12) is not ambiguous and the Father and the Children fall within that definition.

---

[20] This Court's description of the termination of parental rights as the "complete severance of the parent-child bond" in *Scott v. Frank*, 2012 WL 375491 (Del. Feb. 6, 2012) does not constitute a holding that termination of parental rights ends the blood relationship between a parent and child. Similarly, our affirmance of the Family Court's decision in *Division of Family Services v. Hutton*, 765 A.2d 1267 n. 15 (Del. Fam. Ct. 2001) to deny a petition for termination of parental rights in which the Family Court concluded that the child had a biological link to her mother that should be preserved is not a holding that the termination of parental rights means a parent is no longer biologically related to their child.

[21] 13 *Del. C.* § 1113(a) (describing effect of termination of parental rights).

8

NOW, THEREFORE, IT IS ORDERED that the judgment of the Family Court is REVERSED and this matter is REMANDED for the Family Court to determine if the Father's actions constituted abuse under 10 *Del. C.* § 1041. Jurisdiction is not retained.

BY THE COURT:

James T. Vaughn
Justice