IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| WARREN HARRIS,[1] | § | |
| | § | No. 210, 2020 |
| Petitioner Below, | § | |
| Appellant, | § | |
| | § | Court Below—Family Court |
| v. | § | of the State of Delaware |
| | § | |
| DIVISION OF FAMILY SERVICES, | § | |
| | § | File Nos. CS20-01125, CS20-01249 |
| Respondent Below, | § | Petition Nos. 20-05875, 20-05868 |
| Appellee. | § | |
| | § | |

Submitted: February 19, 2021
Decided: April 20, 2021

Before **SEITZ**, Chief Justice; **VALIHURA** and **VAUGHN**, Justices.

## <u>ORDER</u>

Upon consideration of the parties' briefs and the record below, it appears to the Court that:

(1)     The appellant, Warren Harris, filed this appeal from a Family Court decision denying his petitions for guardianship.   After careful consideration of the briefs and the record below, we conclude that the Family Court erred in its

---

[1] The Court previously assigned pseudonyms to the parties under Supreme Court Rule 7(d).

application of the law, but that denial of the petitions should be affirmed on alternative grounds.[2]

(2)     On October 1, 2019, the Family Court terminated the parental rights of the biological parents of Brian Potter and Kevin Sanders ("the Children") and transferred those rights to the appellee, the Division of Family Services ("DFS"), for purposes of adoption.[3]  Brian's parents consented to termination of their parental rights.  Kevin's mother (who was also Brian's mother) consented to termination of her parental rights.  Kevin's father was unknown and his parental rights were terminated for abandonment.  There was no appeal from the termination of parental rights.

(3)     On February 28, 2020, Harris filed a petition for guardianship of the Children.  Harris identified himself as the uncle of the Children.  He alleged that Brian was dependent, neglected, or abused because DFS had taken him from his family.  He alleged that Kevin was dependent, neglected, or abused because he was in foster care instead of with Harris, who had assisted with his health and welfare.

(4)     DFS moved to dismiss the petitions under Family Court Civil Rule 12(b)(6).  DFS argued that the petitions did not satisfy the requirements of 13 *Del.*

---

[2] *Unitrin, Inc. v. American Gen. Corp.*, 651 A.2d 1361, 1390 (Del. 1995) (recognizing that an appellate court may affirm a judgment on the basis of a different rationale than the rationale articulated by the trial court).

[3] The Court may take judicial notice of the records of any State court.  D.R.E. 202(d)(1)(C).

*C.* § 2322 for guardianship because Harris did not plead any facts indicating that the Children were dependent, neglected, or abused in the custody of DFS. DFS also filed answers to the petition. The attorney for the Children responded to the motions to dismiss, admitting DFS's allegations and requesting that the Family Court dismiss the guardianship petitions. Harris opposed the motions to dismiss, arguing that DFS had taken the Children from their blood relatives.

(5)     On May 29, 2020, the Family Court denied the guardianship petitions. Interpreting 13 *Del. C.* § 1114 to permit only adoption or permanent guardianship for a child whose parents' parental rights were terminated, the Family Court denied Harris's petitions because they were for standard guardianship under 13 *Del. C.* § 2320 *et seq.* and did not meet the criteria for permanent guardianship under 13 *Del. C.* § 2350 *et seq*. On June 5, 2020, the Family Court granted a petition for adoption of the Children. On June 26, 2020, Harris appealed the Family Court's denial of his petition for guardianship.

(6)     On appeal, Harris argues that the Family Court and DFS conspired to keep the Children from him and other family members. Harris also makes claims relating to another child who is not part of this appeal.

(7)     DFS argues that affirmance of the Family Court's judgment is appropriate because Harris's guardianship petition did not comply with Section 1114. DFS further contends that Harris's appeal is moot in light of the Children's

3

adoption and Harris's failure to appeal the termination of parental rights or adoption

orders. The Office of the Child Advocate ("OCA"), which appears on behalf of the

Children, argues that the Family Court's interpretation of Section 1114 was

erroneous, but this error is moot because the Children achieved permanency through

adoption and the adoption is not subject to attack through collateral or direct

proceedings.

(8)    This Court's review of a Family Court decision denying a petition for

guardianship includes a review of both law and the facts.[4] We review questions of

law, including the interpretation of statutes, *de novo*.[5] "The goal of statutory

construction is to determine and give effect to legislative intent."[6] When the

unambiguous language of the statute clearly reflects the intent of the legislature, the

statutory language controls.[7] If the statute is determined to be unambiguous, "there

is no need for judicial interpretation, and the plain meaning of the statutory language

controls."[8] "A statute is ambiguous 'if it is reasonably susceptible of different

constructions or interpretations' or 'if a literal reading of the statute would lead to

an unreasonable or absurd result not contemplated by the legislature.'" [9]

---

[4] *Mundy v. Devon,* 906 A.2d 750, 752 (Del. 2006).
[5] *Clark v. Clark*, 47 A.3d 513, 517 (Del. 2012).
[6] *Eliason v. Englehart*, 733 A.2d 944, 946 (Del. 1999).
[7] *Spielberg v. State*, 558 A.2d 291, 293 (Del. 1989)
[8] *Eliason*, 733 A.2d at 946.
[9] *LeVan v. Independence Mall, Inc.*, 940 A.2d 929, 933 (Del. 2007) (quoting *Newtowne Vill. Serv. Corp. v. Newtowne Rd. Dev. Co.*, 772 A.2d 172, 175 (Del. 2001)).

4

(9)     Having carefully considered the relevant statutory language, the parties' submissions, and the order on appeal, we conclude that the Family Court erred in interpreting Section 1114 to prohibit standard guardianship for a child whose parents' parental rights were terminated.  Section 1114 provides:

> After the issuance of an order terminating the existing parental rights and transferring them to the Department or a licensed agency, the agency shall attempt to promptly place the child for adoption.  Every 6 months thereafter until an adoption decree or permanent guardianship order is entered the agency shall advise the Court in writing of the status of the child stating the reasons for the delay in placement or adoption. The Court may, after notice, hold a hearing to determine if any further action is required in the best interest of the child.  When a child has been in a guardianship for at least 2 years, the Department may petition the Court for permission to provide reports on a 12-month basis.[10]

As set forth in this section, DFS or a licensed agency are required, after the termination of parental rights, to attempt prompt placement of the child for adoption and to provide periodic reports on the child's status to the Family Court.  Section 1114 reflects the preference for adoption of a child whose parents' parental rights were terminated, but also recognizes that adoption may not be possible.[11]  Nothing in the plain language of Section 1114 prohibits a standard guardianship for a child who parents' parental rights were terminated.[12]  The Family Court's interpretation

---

[10] 13 *Del. C.* § 1114.

[11] *Id.* (providing "the agency shall *attempt* to promptly place the child for reduction" and referring to outcomes other than adoption) (emphasis added).

[12] This is the case regardless of whether the "guardianship" referred to in the last sentence of Section 1114 refers to a permanent guardianship as DFS contends or a standard guardianship as OCA suggests.  We find it unnecessary to resolve this question as DFS's reporting obligations are not at issue in this appeal.

of Section 1114 to prohibit standard guardianship and to require denial of Harris's petitions for standard guardianship was erroneous.

(10) Notwithstanding this error, the Family Court's denial of the petitions for guardianship may be affirmed on alternative grounds. A petition for standard guardianship must, among other things, plead that "the child is dependent, neglected, or abused and the reasons therefore."[13] Harris failed to plead any facts in his petitions suggesting that the Children were dependent,[14] neglected,[15] or abused.[16] At the time of Harris's petitions, the Family Court had terminated the parental rights of the Children's parents (primarily with their consent) and transferred those rights to DFS for purposes of adoption, the Children were in the custody of DFS, and the Children were living with an adoptive resource. According to Harris's own brief,

---

[13] 13 *Del. C.* § 2322(9)(a).

[14] 13 *Del. C.* § 2302(7) (providing that dependency or dependent child is defined as set forth in 10 *Del. C.* § 901); 10 *Del. C.* § 901(8) (defining dependency or dependent child to mean that a person responsible for the care, custody, or control of a child does not have the ability or financial means to care for the child and fails to provide the necessary care, or the child lives with an adult who does meet the definition of a relative on an extended basis without assessment by DFS or its licensed agency, or the child has been placed with a licensed agency that has certified it cannot complete a suitable adoption plan).

[15] 13 *Del. C.* § 2302(12) (providing that neglect or neglected child is defined as set forth in 10 *Del. C.* § 901); 10 *Del. C.* § 901(18) (defining neglect or neglected child to mean that a person responsible for the care, custody, or control of a child and with the ability and financial means to care for the child fails to provide the necessary care, severely abuses alcohol or drugs and that abuse threatens the child's ability to receive the necessary care, or fails to provide the necessary supervision for the child).

[16] 13 *Del. C.* § 2302(1) (providing that abuse or abused child is defined as set forth in 10 *Del. C.* § 901); 10 *Del. C.* § 901(1) (defining abuse or abused child to mean that a person sexually abuses a child or has care, custody, or control of the child and causes physical injury, emotional abuse, torture, exploitation, or maltreatment or mistreatment).

6

he knew that the Children were in foster care and he attended Family Court proceedings leading to the termination of parental rights on October 1, 2019. Despite Harris's knowledge and participation in the proceedings, he did not file the petitions for guardianship until February 28, 2020. Under these circumstances, denial of the petitions was appropriate. Since the denial of those petitions, the Children have been adopted and the adoption orders are not subject to attack through collateral or direct proceedings.[17]

NOW, THEREFORE, IT IS ORDERED that the judgment of the Family Court is AFFIRMED.

BY THE COURT:

*/s/ Karen L. Valihura*
Justice

---

[17] 13 *Del. C.* § 918 ("Upon the expiration of 6 months from the date of the entry of the decree of adoption, any irregularities in the proceedings shall be deemed cured, and the validity of such decree shall not thereafter be subject to attack either through collateral or direct proceedings.").