■ Two Guys From Harrison-NY, Respondent, v S.F.R. Realty Associates, Appellant, and Grace Retail Corporation, Additional Respondent on Counterclaim.—In an action for a judgment declaring the rights of the parties with respect to a commercial lease, the defendant S.F.R. Realty Associates appeals from a judgment of the Supreme Court, Nassau County (O'Shaughnessy, J.), entered December 13, 1989, which, after a nonjury trial, *inter alia,* declared that the plaintiff was not in default under a lease entered into with the defendant's predecessor in interest.

Ordered that the judgment is affirmed, with one bill of costs payable to the respondents.

The defendant S.F.R. Realty Associates (hereinafter SFR) was the holder of a reversionary interest in improved real property (hereinafter the premises) located in New Hyde Park under a long-term lease originally executed by its predecessor in interest. The leased premises, a 100,000-square-foot building located in a shopping center, had initially been leased to W.T. Grant Company (hereinafter Grant). Grant subsequently assigned its interest to the plaintiff.

In 1981, the plaintiff exercised an option to close its store. It vacated the premises in early 1982 and eventually reached an

agreement with Grace Retail Corporation, which was to sublease approximately 50% of the floor area for use as a Channel Home Center store (hereinafter Channel). To prepare the premises for occupancy by Channel, the plaintiff made substantial nonstructural interior changes and proposed four exterior changes. When SFR objected to these alterations, litigation began. SFR finally prevailed in November 1984 when the Court of Appeals held that the plaintiff had no right to make the modifications (see, *Two Guys v S.F.R. Realty Assocs.,* 63 NY2d 396). This meant that the plaintiff had to cure by returning the premises to their original condition. The parties had stipulated that the plaintiffs' time to do the necessary work was stayed pending determination by the Court of Appeals; this agreement was extended after the case was decided, and the period to cure was then tolled pursuant to *First Natl. Stores v Yellowstone Shopping Ctr.* (21 NY2d 630). The plaintiff sought the *Yellowstone* injunction upon SFR's refusal to execute the building permit application forms as required by the municipality having jurisdiction. Ultimately these forms were signed, the plaintiff discontinued its action, without prejudice, and the restoration began.

However, SFR served the plaintiff with a notice of termination dated November 1, 1985, pursuant to paragraph 17 (a) of the lease, claiming that the plaintiff had failed to apply a number of matching bricks to the exterior wall and to reinstall a conveyer belt system. Approximately one week later the plaintiff commenced the instant action pursuant to CPLR 3001 and CPLR 6301 for a judgment declaring, *inter alia,* that the lease was in full force and effect. SFR counterclaimed against the plaintiff and Channel for judgment granting it possession of the premises on the ground that the plaintiff had failed to cure the default within 30 days, as provided by paragraph 17 (a) of the lease.

By order dated February 18, 1986, the plaintiff obtained another *Yellowstone* stay from the Supreme Court (Ain, J.), and ultimately the matter came on for a nonjury trial before Justice O'Shaughnessy. In the judgment which resulted the court determined that the plaintiff was not in default and that the notice of termination was a nullity. The court dismissed SFR's counterclaims, and taxed a $2,855 premium for the bond the plaintiff and Channel obtained to secure the second *Yellowstone* injunction as a disbursement.

SFR argues that the plaintiff and Channel failed to prove that the exterior restoration was timely. We disagree. The 30-day period within which Channel had to cure its default

commenced on September 21, 1985, when the injunction granted in the prior action expired. By the time the notice of termination was served in early November, the exterior structural restoration had been completed, except for replacement of the face brick which had to be specially ordered in order to match the existing brick. When the brick was finally installed, SFR objected to its appearance and matching brick satisfactory to SFR was not in place until January 1986. However, the court correctly noted two important factors in determining that the delay in replacing the brick did not constitute a default under the terms of the lease. First, the brick "was a minor aspect of the overall exterior restoration", and so failure to satisfactorily replace it did not conflict with a finding of substantial performance within the applicable period. Second, SFR had remained silent in early 1985 after receiving a sample of the brick to which it later objected. Consequently, in view of the need to specially order this building material, the record supports the conclusion that the additional time was reasonably necessary to effect a cure pursuant to paragraph 17 (a).

SFR claims that the court also erred in determining that the plaintiff and Channel did not make structural alterations to the interior of the premises, the making of which would have constituted a default under paragraph 6 (a) of the lease. Specifically, SFR contends that they had removed "structural" block walls and had added a support beam. The court acknowledged that the wall was not replaced, and thus the question became whether or not the wall performed a structural function. However, in light of the conflicting expert testimony concerning whether the block walls performed such a function and whether the support beam was installed by SFR, the plaintiff, or Channel, the issue turned on the credibility of those expert witnesses. Witness credibility, as well as the weight to be accorded to the evidence, are primarily questions to be determined by the trier of fact, which saw and heard the witnesses (see, e.g., Kincade v Kincade, 178 AD2d 510; Ausch v St. Paul Fire & Mar. Ins. Co., 125 AD2d 43). The determination of the trier of fact should not be disturbed if supported, as here, by a fair interpretation of the evidence (see, Barringer v Donahue, 168 AD2d 406, 407).

SFR further contends that the court improperly approved the awarding of costs for the premium paid on the bond secured by the plaintiff in connection with the second Yellowstone injunction. However, a party to whom costs are awarded in an action or on appeal is entitled to tax his necessary

disbursements for "reasonable and necessary expenses as are taxable according to the course and practice of the court, by express provision of law or by order of the court" (CPLR 8301 [a] [12]). Here, the court properly awarded the premium for the injunction bond as a reasonable and necessary expense of the action (see, Pross v Jadam Equities, 171 AD2d 579; Deere Co. v Cerone Equip. Co., 33 AD2d 257, affd 27 NY2d 926).

Finally, we note that SFR also asserts that the order dated February 18, 1989, granting the preliminary injunction (the second *Yellowstone* stay) should be vacated. This contention, however, is not properly before us. CPLR 5501 (a) (1) provides that an appeal from a final judgment brings up for review "any non-final judgment or order which necessarily affects the final judgment". This excludes from review all incidental orders which do not have any impact on the final judgment. Inasmuch as the *Yellowstone* injunction was a provisional remedy designed to retain the status quo while the action was pending, it does not "necessarily affect" the final judgment, and thus the appeal does not bring it up for review (see, *Cinerama, Inc. v Equitable Life Assur. Socy.*, 38 AD2d 698; Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C5501:4, at 24).

We have considered SFR's remaining contentions and find them to be either unpreserved for appellate review or without merit. Bracken, J. P., O'Brien, Ritter and Copertino, JJ., concur.