# IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| SECRETARY CLAIRE DEMATTEIS in her official capacity as Secretary of the Delaware Department of Human Resources and Co-Chair of the State Employee Benefits Committee, DIRECTOR CERRON CADE in his official capacity as Director of the Delaware Office of Management and Budget and Co-Chair of the State Employee Benefits Committee, DELAWARE DEPARTMENT OF HUMAN RESOURCES, DELAWARE STATE EMPLOYEE BENEFITS COMMITTEE, and DELAWARE DIVISION OF STATEWIDE BENEFITS | § § § § § § § § § § § § § § § § § § § § § | No. 178, 2023D Court Below: Superior Court of the State of Delaware C.A. No. N22C-09-526 |
| Defendants Below, Appellants/Cross Appellees, | § § § § | |
| v. | § § | |
| RISEDELAWARE INC., KAREN PETERSON, and THOMAS PENOZA, | § § § | |
| Plaintiffs Below, Appellees/Cross Appellants. | § § § | |

Submitted: January 31, 2024
Decided: April 12, 2024

Before **TRAYNOR, LEGROW**, Justices; and **ARRINGTON**, Judge.[1]

Upon appeal from the Superior Court of the State of Delaware. **REVERSED.**

---

[1] Sitting by designation under Del. Const. art. IV, § 12 and Supreme Court Rules 2(a) and 4(a), to complete the quorum.

Patricia A. Davis, Esquire, Adria Martinelli, Esquire, DELAWARE DEPARTMENT OF JUSTICE, Wilmington, Delaware; Max B. Walton, Esquire (*argued*), Shaun Michael Kelly, Esquire, Lisa R. Hatfield, Esquire, CONNOLLY GALLAGHER LLP, Wilmington, Delaware, *for Appellants/ Cross Appellees Secretary Claire Dematteis in her official capacity as Secretary of the Delaware Department of Human Resources and Co-Chair of the State Employee Benefits Committee, Director Cerron Cade in his official capacity as Director of the Delaware Office of Management and Budget and Co-Chair of the State Employee Benefits Committee, Delaware Department of Human Resources, Delaware State Employee Benefits Committee, and Delaware Division of Statewide Benefits.*

Sidney S. Liebesman, Esquire (*argued*), Austen C. Endersby, Esquire, Nathan Barillo, Esquire, FOX ROTHSCHILD LLP, Wilmington, Delaware, *for Appellees/ Cross Appellants RiseDelaware Inc., Karen Peterson, and Thomas Penoza*.

**LEGROW**, Justice:

This is an appeal from a decision of the Superior Court (1) finding that the decision of the State Employee Benefits Committee ("SEBC") adopting a Medicare Advantage Plan for State retirees was subject to the requirements of Delaware's Administrative Procedures Act ("APA"); (2) granting Appellees' Motion to Stay the implementation of the Medicare Advantage Plan; and (3) requiring the State to keep its retirees' Medicare Supplement Plan in full force and effect. On cross-appeal, Appellees challenge the Superior Court's decision denying their application for attorneys' fees.

The core question before us is one of statutory interpretation: under the APA, is the SEBC's selection of a particular type of Medicare plan a "regulation" as the General Assembly has defined that term? Because the statute relevantly limits a regulation to a "rule or standard," and the SEBC's choice of a statutorily authorized Medicare plan does not fall within the plain meaning of the terms "rule" or "standard," we conclude that the SEBC's decision was not a regulation. Accordingly, the Superior Court did not have jurisdiction to enter the challenged stay, and we reverse the decision on appeal. The important policy considerations that attend the selection of healthcare coverage for State retirees are questions appropriately addressed to the legislative and executive branches.

## I.   RELEVANT FACTUAL AND PROCEDURAL BACKGROUND[2]

## A.   SEBC process

The SEBC is responsible for implementing, overseeing, and managing State employee benefits.[3]  The agency's powers and duties are codified in 29 *Del. C.* §§ 9602(b) and 5210(1-5).  Those responsibilities and powers include the "[s]election of the carriers or third-party administrators deemed to offer the best plan to satisfy the interests of the State and its employees and pensioners in carrying out the intent of this chapter."[4]  The Delaware Code cabins the SEBC's discretion by specifying the types of coverage it must provide, including that the SEBC must select "a plan which is supplemental to Medicare parts A and B, or constructed as a plan under Medicare part C, for eligible pensioners entitled to services, rights or benefits under the federal Medicare Program."[5]  Before 2023, the State retirees' health insurance plan was a Medicare part A and B supplemental plan titled "Highmark BCBS Special Medicfill Supplemental Plan."[6]

---

[2] Unless otherwise noted, the recited facts are taken from the Superior Court's October 19, 2022 Order.  *See RiseDelaware Inc. v. DeMatteis*, 2022 WL 11121549 (Del. Super. Oct. 19, 2022) (hereinafter "Stay Order at __.").

[3] Corrected Appellants' Opening Brief at 5 (hereinafter, "Appellants' Opening Br. at __").  Title 29, Section 9602(a) of the Delaware Code establishes the members of the SEBC.

[4] 29 *Del. C.* § 5210(3).

[5] 29 *Del. C.* § 5203(b).

[6] Appellants' Opening Br. at 6 (citing App. to Appellants' Opening Br. at A27, A67).  *See* Appellees' Answering Br. on Appeal and Cross-Appellants' Opening Br. on Cross Appeal at 10 (hereinafter, "Appellees' Answering Br. at __.") (containing an explanation of retirees' healthcare benefits).

The SEBC held a meeting on February 28, 2022, at which it unanimously approved a motion to move the retirees to a Group Medicare Advantage plan, which is a plan under Medicare part C.[7] "At the March 14th meeting, the Committee approved the implementation of the Medicare Advantage plan for the January 1, 2023 plan year."[8] The SEBC met again on April 25, 2022, and "approved the rates for the Medicare pensioner plan options and those proposed options were voted on to replace the [then-existing plans]."[9] At the same meeting, "a motion was adopted to approve Medicare Advantage plan with prescription as the only Medicare pensioner option."[10] On June 1, 2022, an introductory mailing was sent to eligible Medicare pensioners about the transition to a Medicare Advantage Plan beginning January 1, 2023.[11]

---

[7] App. to Appellants' Opening Br. at A234.

[8] Stay Order at *1.

[9] *Id.*

[10] *Id.* The parties, especially Appellees, spent a substantial portion of their briefs detailing the SEBC's process for considering the Medicare Advantage Plan and the notice provided to the public regarding that process. There is no dispute, however, that if the SEBC's adoption of a Medicare Advantage Plan fell within Delaware's Administrative Procedures Act, the SEBC did not meet the requirements of that Act. Conversely, if the SEBC's decision did not fall within the Act, the process it followed is not relevant because Appellees are not pursuing any other claim. Accordingly, we do not recite in detail the various meetings and decision points on which Appellees focus.

[11] App. to Appellants' Opening Br. at A72.

3

The Medicare Advantage contract was awarded on February 28, 2022, and finalized on September 28, 2022.[12] Two days later, on September 30, 2022, "the State updated information on its website providing an 11-page document labeled "Frequently Asked Questions" ("FAQs") under its information tab in Medicare Benefits explaining this shift in health care coverage to Medicare Advantage."[13] On October 12, 2022, after this action was filed in the Superior Court, an overview was made available on the State's website that explained the prior authorization process that the new plan would require for certain medical procedures.[14]

## B.    Complaint filed in Superior Court

On September 25, 2022, Appellees/Plaintiffs below, RiseDelaware Inc.;[15] Karen Peterson; and Thomas Penoza (collectively, "Appellees" or "RiseDelaware") filed a Complaint in the Superior Court against Appellants/Defendants below, Secretary Claire DeMatteis, in her official capacity as Secretary of the Delaware Department of Human Resources and Co-Chair of the SEBC; Director Cerron Cade, in his official capacity as Director of the Delaware Office of Management and

---

[12] *Id.* at A130.

[13] Stay Order at *2 ("The FAQs document explained the policy requires State retirees to enroll in a Medicare Advantage plan with prescription or lose their State-funded health insurance.").

[14] *Id.*  The website was labeled "Highmark Blue Cross Blue Shield of Delaware Freedom Blue Medicare Advantage PPO Prior Authorization Overview." *Id.*

[15] RiseDelaware Inc. is a nonprofit corporation which "was established and is managed by Delaware retirees to act as a sentinel on issues involving State health care benefits provided for Medicare-eligible Delaware retirees[.]" App. to Appellees' Answering Br. at B4.

4

Budget and Co-Chair of the SEBC; the SEBC; the Delaware Department of Human Resources ("DHR"); and the Delaware Division of Statewide Benefits ("DSB") (collectively, "Appellants" or "SEBC").[16] The Complaint contained three counts and sought two forms of relief: (1) declaratory relief under 10 *Del. C.* § 6501 and 29 *Del. C.* § 10141, and (2) a stay order under 29 *Del. C.* § 10144 preventing Appellants from executing a contract with Highmark or further implementing a Medicare Advantage Plan pending judicial review.[17] Given the expectation that open enrollment for the new plan was scheduled to begin on October 3, 2022, the parties engaged in expedited proceedings in the Superior Court.[18]

## C.  Motion to Stay and Stay Order

On October 4, 2022, Appellees filed a Motion to Stay "implementation of the new Highmark Medicare Advantage Plan for State retirees and the open enrollment period currently in effect for State retirees" under 29 *Del. C.* § 10144.[19] Appellants filed their Answering Brief in Opposition to the Motion to Stay on October 11, 2022.[20] On October 17, 2022, the Superior Court heard oral argument on the Motion

---

[16] *Id.* at B1–38.

[17] *Id.* ("Count One. Violation of the Administrative Procedures Act, 29 *Del. C.* §§ 10115–10118. . . . Count Two. Violation of the Administrative Procedures Act, 29 *Del. C.* §§ 101414. . . . Count Three. Declaratory Relief under 10 *Del. C.* § 6501 and 29 *Del. C.* § 10141.").

[18] App. to Appellants' Opening Br. at A34.

[19] App. to Appellees' Answering Br. at B89.

[20] App. to Appellants' Opening Br. at A17.

5

to Stay and reserved its decision.[21]  On October 19, 2022, the Superior Court issued an Order granting the Motion to Stay (the "Stay Order").[22]

In granting the Motion to Stay, the Superior Court held that it had authority to enter a stay under 29 *Del. C.* § 10144 because "the decision of the SEBC is considered a regulation under the Delaware Administrative Procedures Act[.]"[23] The court first noted that under the APA, a "[r]egulation means any statement of law, procedure, policy, right, requirement or prohibition formulated and promulgated by an agency as a rule or standard, or as a guide for the decision of cases thereafter by it or by any other agency, authority or court."[24]  Further, the court noted that the SEBC exercised its authority—which is granted under Title 21 Sections 9602 and 5210 of the Delaware Code—when it "enacted a policy requiring retirees to move from their State-subsidized Medicare Plan to Medicare Advantage plan or stay with traditional Medicare and give up their State-subsidized benefits. Therefore, such policy change is a regulation under the APA."[25]  The court rejected Appellants' argument that, under this Court's decision in *Free-Flow Packaging Int'l,*

---

[21] *Id.* at A9.

[22] Stay Order at *1.

[23] *Id.* at *3.

[24] *Id.*; 29 *Del. C.* § 10102(7).

[25] Stay Order at *3.

6

*Inc. v. Sec'y of Dep't of Nat. Res. & Env't Control of State*,[26] 29 *Del. C.* §§ 9602 and 5210 "authorized [the] SEBC to change retirees' healthcare plans without following the formal APA requirements."[27] The court held that "[h]ere, there is no specific statutory directive for SEBC to force all retirees from their State-subsidized benefits to a Medicare Advantage plan or lose benefits[,]" and "[t]herefore, *Free-Flow* does not apply."[28]

The court next assessed the merits of Appellees' arguments for a stay, including the likelihood of success on the merits and imminent harm, finding that there was a likelihood of success on the merits and that retirees in the present and future would face irreparable harm if the stay was not granted.[29] Further, the court found that a stay would not harm the public and concluded that "the harm to [Appellees] far outweighs the harm to [Appellants] and the public."[30]

In granting the Appellees' Motion to Stay, which effectively meant State retirees would retain their current benefits for the immediately foreseeable future, the court stated that "implementation of a Medicare Advantage Plan for State retirees and acceptance of enrollment into the Plan, including by way of automatic

---

[26] *Free-Flow Packaging Int'l, Inc. v. Sec'y of Dep't of Nat. Res. & Env't Control of State*, 861 A.2d 1233 (Del. 2004).

[27] Stay Order at *3.

[28] *Id.*

[29] *Id.* at *3–4.

[30] *Id.* at *5.

7

enrollment in the open enrollment period currently in effect for State retirees is stayed until further Order by this Court."[31] The court also required the State to ensure "that the healthcare insurance and benefits available to State retirees prior to October 3, 2022, or in which they were enrolled prior to that time, remain in full force and effect."[32] Further, the court scheduled a trial on the merits to make final factual determinations.[33] Not long after that, the trial was removed from the calendar at the parties' request.[34]

## D. Petition for Attorneys' Fees

On November 14, 2022, Appellees filed a Motion for Attorneys' Fees (the "Fee Motion"), arguing that the APA allows an award of fees when there is success in achieving a stay order and that the Appellants' conduct warranted fee-shifting in this case.[35] On February 8, 2023, the court issued an order denying Appellees' Fee Motion.[36]

---

[31] *Id.*

[32] *Id.*

[33] *Id.*

[34] App. to Appellants' Opening Br. at A8 (11/9/2022 Stipulation and [Proposed] Order for Resolution of Remaining Claims and Issues, D.I. No. 36).

[35] App. to Appellees' Answering Br. at B340–61.

[36] *Id.* at B288–94.

**E.      Stipulations for Final Judgment**

On November 18, 2022, the parties filed a Joint [Proposed] Stipulation and Order for Resolution of Remaining Claims and Issues.[37]   The proposed joint stipulation and order provided: (1) that Appellants would file a memorandum in opposition to Appellees' Fee Motion; (2) the timelines for filings and procedures if the court were to rule in favor of the Fee Motion; (3) the procedure the parties would follow upon resolution of the Fee Motion; and (4) that "[u]pon entry of final judgment, each party shall be permitted to appeal as authorized by law.  Nothing in this stipulation shall be deemed a waiver of any applicable right of appeal nor shall it be deemed to preclude any arguments on appeal that were raised in the underlying proceedings."[38]  On December 6, 2022, the court refused to enter the November 18, 2022 stipulation and proposed order, requesting that the parties "[p]lease file a stipulation reflective of the resolution of the case. It seems that the parties are at the point of over litigating this case."[39]

On December 16, 2022, the parties filed another Stipulation and [Proposed] Order for Entry of Final Judgment asking the court to enter a Final Order stating that: (1) the action was ripe for entry of final judgment on all matters except the

---

[37] *Id.* at B270–72.

[38] *Id.*

[39] *Id.* at B274–78.

court's ruling on the Motion to Amend[40] and the Fee Motion; (2) "[u]pon rendering its rulings on the Motion to Amend and Fee Petition, the Court may enter the form of Order, attached hereto as Exhibit 1, as its Order and Final Judgment, fully disposing of all matters in the Action[;]" and (3) "[u]pon entry of the attached form of Order, each party shall be permitted to appeal as authorized by law. Nothing in this stipulation shall be deemed a waiver of any applicable right of appeal; nor shall it be deemed to preclude any arguments on appeal that were raised in the underlying proceedings."[41]  For reasons that are not clear from the record before us, the court never entered this proposed stipulation and order.

## F.    Appellants' First Appeal

On February 15, 2023, following the ruling denying the Fee Motion, the Appellants filed their Notice of Appeal in this Court.[42]  Because the court had not entered a final order, the Appellants' first appeal was dismissed as interlocutory and remanded to the Superior Court.[43]

---

[40] On December 2, 2022, the Appellees filed a Motion to Amend and Supplement their Complaint, which the court denied on December 19, 2022. *Id.* at B444; Appellants' Opening Br. at 12.

[41] App. to Appellees' Answering Br. at B279–87.

[42] Appellants' Opening Br. at 13.

[43] *DeMatteis v. RiseDelaware Inc.*, 295 A.3d 1098, 2023 WL 2761690, at *2 (Del. Apr. 3, 2023) (TABLE).

**G. Appellants' Motion for Final Order and the Trial Court's Order on Final Judgment**

After dismissal of Appellants' first appeal, Appellants submitted a Motion and [Proposed] Order for Entry of Final Judgment.[44] Appellees opposed that motion, and the court heard oral argument.[45] On May 22, 2023, the court issued its Order on Final Judgment (the "Final Order").[46] The Superior Court's Final Order did not adopt the language proposed by the SEBC.[47] Appellants filed their notice of appeal in this Court on the same day. On June 21, 2023, Appellees filed their notice of cross-appeal.

## II. STANDARD OF REVIEW

This Court reviews questions of law, including the interpretation of a statute, *de novo*.[48] "The goal of statutory construction is to determine and give effect to legislative intent."[49] When the unambiguous language of the statute clearly reflects the legislature's intent, the plain meaning of the statutory language controls.[50] "A

---

[44] App. to Appellees' Answering Br. at B301–12.

[45] Plaintiffs' Opp. To Defendants' Motion for Entry of Final Judgment (Super. Ct. D.I. No. 64); App. to Appellees' Answering Br. at B313–29.

[46] *RiseDelaware Inc. v. DeMatteis*, 2023 WL 3625996 (Del. Super. May 22, 2023) (hereinafter "Final Order at __.").

[47] *Id.*; App. to Appellees' Answering Br. at B301–05.

[48] *City of Wilm. v. Nationwide Ins. Co.*, 154 A.3d 1124, 1127 (Del. 2017); *Clark v. Clark*, 47 A.3d 513, 517 (Del. 2012).

[49] *Eliason v. Englehart*, 733 A.2d 944, 946 (Del. 1999).

[50] *Spielberg v. State*, 558 A.2d 291, 293 (Del. 1989); *Eliason*, 733 A.2d at 946.

11

statute is ambiguous 'if it is reasonably susceptible of different constructions or interpretations' or 'if a literal reading of the statute would lead to an unreasonable or absurd result not contemplated by the legislature.'"[51]

We review an attorneys' fee award for abuse of discretion.[52] Delaware law follows the American Rule, under which litigants are generally responsible for paying their own litigation costs.[53] Courts recognize "limited equitable exceptions" to the American Rule, including one for a party's "bad faith" conduct throughout litigation.[54] Although there is no all-encompassing definition of "bad faith" conduct, Delaware courts have granted attorneys' fees where a party "unnecessarily prolonged or delayed litigation, falsified records, or knowingly asserted frivolous claims."[55] In Delaware, the "bad faith" exception only applies in "extraordinary circumstances."[56] Its purpose is "to deter abusive litigation and protect the integrity of the judicial process."[57]

---

[51] *LeVan v. Independence Mall, Inc.*, 940 A.2d 929, 933 (Del. 2007) (quoting *Newtowne Vill. Serv. Corp. v. Newtowne Rd. Dev. Co.*, 772 A.2d 172, 175 (Del. 2001)).

[52] *Bako Pathology LP v. Bakotic*, 288 A.3d 252, 266 (Del. 2022); *Bhole, Inc. v. Shore Invs., Inc.*, 67 A.3d 444, 449 (Del. 2013); *Sternberg v. Nanticoke Mem'l Hosp., Inc.*, 62 A.3d 1212, 1220 (Del. 2013); *Johnston v. Arbitrium (Cayman Is.) Handels AG,* 720 A.2d 542, 546 (Del. 1998).

[53] *Mahani v. Edix Media Group, Inc.*, 935 A.2d 242, 245 (Del. 2007); *Johnston,* 720 A.2d at 545.

[54] *Montgomery Cellular Holding Co., Inc. v. Dobler*, 880 A.2d 206, 227 (Del. 2005).

[55] *Johnson*, 720 A.2d at 546.

[56] *Brice v. State Dept. of Correction*, 704 A.2d 1176, 1179 (Del. 1998).

[57] *Montgomery Cellular*, 880 A.2d at 227.

## III.   ANALYSIS

There are two main issues on appeal.  First, Appellants assert that the Superior Court erred in holding that the SEBC's decision adopting a Medicare Advantage plan was a regulation as that term is defined in the APA.  Second, on cross-appeal, Appellees argue that the Superior Court erred by refusing to grant their application for attorneys' fees.

### A.   The Superior Court erred in holding that the SEBC's decision was a regulation as defined in Delaware's Administrative Procedures Act.

Appellants contend that the SEBC is not required to promulgate a regulation when it enters into a contract for the administration of health care benefits for State retirees or employees.[58]  Appellants argue that the SEBC's decision to move State retirees to a Medicare part C plan was consistent with a specific statutory directive authorizing that step and that the canons of statutory construction show that the selection of a carrier is not a "regulation" as the APA defines that term.[59]  Because the SEBC's Medicare Advantage decision is not governed by the APA, Appellants contend that the Superior Court's Stay Order, which was issued under the APA, must be reversed.[60]

---

[58] Appellants' Opening Br. at 14.

[59] *Id.* at 14, 19.

[60] *Id.* at 24.

In response, Appellees argue that Appellants are legally foreclosed from challenging the Stay Order in this appeal because: (1) Appellants "did not ask the Superior Court at the final judgment stage to lift the Stay Order's injunction against the implementation of Medicare Advantage; and" (2) Appellants' "Opening Brief did not challenge the Final Order so that their arguments seeking to have the Stay Order overturned amount to an untimely interlocutory appeal not in compliance with Superior Court Rule 42[.]"[61]  Appellees further argue that, if this Court reaches the merits of the issue on appeal, the Stay Order should be upheld because the SEBC's decision to move to a Medicare Advantage Plan is a "policy change" and therefore is a regulation within the meaning of the APA.  Appellees argue that the SEBC's adoption of Medicare Advantage was not pursuant to a specific legislative directive and no statutory provision negated the APA's binding rule-making obligations on the SEBC.[62]

### 1.    The issue on appeal may be considered on its merits.

Before addressing the substance of Appellants' position, Appellees advance several procedural arguments that they contend bar our consideration of this appeal. Appellees first urge us to remand without addressing the merits of Appellants'

---

[61] Appellees' Answering Br. at 31.

[62] *Id.* at 38–43.

arguments because the appeal challenges an interlocutory order.[63]  Appellees assert

that Appellants only dispute the Stay Order, that this Court dismissed as

interlocutory Appellants' previous attempt to appeal that order,[64] and that Appellants

did not "argue the Stay Order was merged into and affected the Final Order, such

that the Stay Order could be appealed on that basis."[65]  Appellees further argue that

"[t]he Superior Court's Final Order was affected *not* by the Stay Order, but rather

[by] the parties' own actions to resolve the matter *after* the Stay Order was

entered."[66]

We confess that this argument is both puzzling and challenging to address

because of the unusual order of proceedings in the Superior Court.  We conclude,

however, that Appellees' procedural arguments lack merit.  Although Appellees are

correct that the Final Order does not expressly merge with the Stay Order, the Final

Order refers to the Stay Order multiple times.[67]  The trial court's clear intent was to

enter a final, appealable order as to all the issues in the case.  Moreover, Appellees

---

[63] *Id.* at 32.

[64] *Id. See DeMatteis v. RiseDelaware Inc.*, 295 A.3d 1098, 2023 WL 2761690, at *2 (Del. Apr. 3, 2023) (TABLE) ("[T]he Superior Court's failure to enter the proposed order for entry of final judgment—again, submitted at the Superior Court's request and the form and substance of which was agreed to by the parties—renders the finality and scope of the Order and the Decision uncertain. Accordingly, we must dismiss this appeal for the State's failure to comply with Rule 42 when taking an appeal from an interlocutory order.").

[65] Appellees' Answering Br. at 33.

[66] *Id.*

[67] Final Order at *2.

conceded at oral argument that they had agreed that the issue was ripe for appeal and "the [Appellees] were more than happy to come on to an appeal on the issue of whether the APA applied."[68]

Appellees support their contention that this appeal is interlocutory by citing *Tyson Foods, Inc. v. Aetos Corp.*[69] *Tyson* stands for the proposition that "[a]n aggrieved party can appeal to this Court only after a final judgment is entered by the trial court. . . . [and] a final judgment is one that determines all the claims as to all the parties."[70] But Appellees' reliance on *Tyson* is misplaced; unlike the appellant in *Tyson*, the Appellants here filed a timely appeal of the trial court's subsequent judgment, which was the Final Order. The Final Order was entered a month after this Court remanded the matter to the trial court after holding that the Stay Order was interlocutory.[71] The trial court and the parties intended the Final Order to be a final judgment. To remand the matter again as interlocutory would be absurd and would put the courts in a perpetual loop, ignoring the clear intent of the trial court

---

[68] Oral Argument at 18:12–19:20.

[69] 809 A.2d 575, 580 (Del. 2001); Appellees' Answering Br. at 34.

[70] *Tyson Foods*, 809 A.2d at 579 ("The test for whether an order is final and therefore ripe for appeal is whether the trial court has clearly declared its intention that the order be the court's 'final act' in a case.") (citing Del. Const. art. IV, § 11(1)(a); *Harrison v. Ramunno*, 730 A.2d 653 (Del. 1999)). *See J.I. Kislak Mortgage Corp. v. William Matthews Builder, Inc.*, 303 A.2d 648, 650 (Del. 1973) (holding order is deemed final if decision is trial court's last act in disposing of all justiciable matters within its jurisdiction).

[71] The Final Order was issued on May 22, 2023. Final Order at *1. This Court issued its decision in the initial appeal on April 3, 2023. *DeMatteis v. RiseDelaware Inc.*, 295 A.3d 1098, 2023 WL 2761690, at *2 (Del. Apr. 3, 2023) (TABLE).

16

and the parties. Dismissal of the appeal also would leave the SEBC without a clear directive as to whether the APA applies to its selection of health plans for State employees and retirees.

Appellees also make a "merger" argument, citing a series of non-Delaware cases[72] that explain that a "provisional remedy designed to retain the status quo while the action was pending [] does not 'necessarily affect' the final judgment, and thus the appeal does not bring it up for review."[73] Although it is true that a provisional remedy may not always "affect" the final judgment, here the Stay Order does just that. The trial court's conclusion that the APA applied to the SEBC's decision effectively resolved the merits of the parties' dispute and ended the need for further litigation in the Superior Court. Given the facts of this case, the language of the proposed stipulations and the Final Order, and the fact that there were no other readily apparent steps available to Appellants to seek review of the trial court's legal conclusions regarding the scope of the APA, the requirements for merger are met.

Appellees' argument that Appellants are legally foreclosed from challenging the Stay Order on the basis of waiver is equally unavailing. The parties agreed to

---

[72] *See Camesi v. Univ. of Pittsburgh Med. Ctr.*, 729 F.3d 239, 244–45 (3d Cir. 2013) ("Under the 'merger rule,' prior interlocutory orders merge with the final judgment in a case, and the interlocutory orders (to the extent that they affect the final judgment) may be reviewed on appeal from the final order.") (citing and quoting *In re Westinghouse Sec. Litig.,* 90 F.3d 696, 706 (3d Cir. 1996)).

[73] *Two Guys From Harrison-NY v. S.F.R. Realty Assocs.*, 186 A.D.2d 186, 189(N.Y. App. Div. 1992); Appellees' Answering Br. at 33.

two stipulations—on November 18, 2022 and December 16, 2022—that express their shared intent that a final judgment be entered.[74] The stipulated final orders proposed by the parties would have made merger clear. Further, at oral argument the trial court recognized that the "cased ended outside of court" with "no trial" and no "findings of fact or conclusions of law," and the only issue left to address by the court was the request for attorneys' fees.[75]

These stipulations contained clear language that "[w]ith the exception of the Court's rulings on the Motion to Amend and Fee Petition, the Action is ripe for entry of final judgment."[76] Further, the December 16, 2022 stipulation provided that upon a ruling on the Motion to Amend and Fee Petition, all matters in the action were fully disposed, and "[n]othing in this stipulation shall be deemed a waiver of any applicable right of appeal; nor shall it be deemed to preclude any arguments on appeal that were raised in the underlying proceedings."[77] Appellants argue that:

> Although the Superior Court did not sign this particular proposed order, choosing to use its own form of order, both parties agreed that the conclusions of law to date disposed of the issues, other than [Appellees'] request for attorneys' fees, at the lower court level. The parties presented the stipulation to the Court with full knowledge that

---

[74] App. to Appellees' Answering Br. at B270–72, B279–87.

[75] *Id.* at B315.

[76] *Id.* at B280.

[77] *Id.* at B281.

the other side would be appealing any adverse decision of the Superior Court.[78]

We agree with this reasoning. Although the court did not enter either proposed stipulation, the fact remains that the parties agreed to their terms, and nothing in Appellants' actions can fairly be construed as a waiver of their right to appeal the trial court's legal holding. Appellees cite no authority for their assertion that Appellants waived the issue by failing to ask the trial court to lift the Stay Order, and we cannot discern a legal or practical reason to find waiver under these circumstances.

Appellees also argue that the appeal was mooted by the SEBC's later actions, particularly (1) a September 7, 2023 agreement signed by the State and Highmark Blue Cross Blue Shield terminating the contract at issue in the trial court; and (2) a decision and vote by the SEBC on October 2, 2023 to solicit bids for a Medicare supplement plan that "duplicates the current plan without deviation."[79] The issue of mootness was raised at oral argument, but it was not properly presented in the parties' briefs and rests on facts that are not part of the appellate record.[80] In any event, the plain language of the Stay Order required Appellants to "take all necessary

_____

[78] Appellants' Reply Br. on Appeal and Cross-Appellees' Answering Br. on Cross-Appeal at 23 (hereinafter, "Appellants' Reply Br. at __.") (citing App. to Appellees' Answering Br. at B261, B272, B311).

[79] Oral Argument at 21:18–22:47.

[80] *Id.* at 21:09–24:59.

19

and proper steps to ensure that the healthcare insurance and benefits available to State retirees prior to October 3, 2022, or in which they were enrolled prior to that time, remain in full force and effect."[81] The Court cannot conclude that the SEBC's actions in compliance with the trial court's order mooted the SEBC's appeal challenging that order. There is a live controversy about the Stay Order, which the next section of this opinion addresses.

### 2. The challenged agency decision was not a "Regulation" under the relevant statute.

The APA grants the Superior Court the authority to stay enforcement of an agency regulation under 29 *Del. C.* § 10144, which states:

> When an action is brought in the Court for review of an agency regulation or decision, enforcement of such regulation or decision by the agency may be stayed by the Court only if it finds, upon a preliminary hearing, that the issues and facts presented for review are substantial and the stay is required to prevent irreparable harm.

There is no dispute that the Superior Court's authority to issue a stay under Section 10144 is limited to actions challenging an agency regulation or decision. Neither side argues that the SEBC's action was a "decision," which is specifically limited by statute to circumstances not at issue in this case.[82] Whether the SEBC's action in adopting a Medicare Advantage Plan was a regulation is the only aspect of the trial

---

[81] Stay Order at *5.

[82] 29 *Del. C.* §§ 10102(3), 10142.

court's decision that Appellants challenge. If it was, the APA applies, and the SEBC concedes that it did not comply with the APA's procedures when it selected the Medicare Advantage Plan.[83]

The issue before us is a straightforward statutory interpretation question. "Regulation" is defined in 29 *Del. C.* § 10102. The code states that "Regulation":

> means any statement of law, procedure, policy, right, requirement or prohibition formulated and promulgated by an agency as a rule or standard, or as a guide for the decision of cases thereafter by it or by any other agency, authority or court. Such statements do not include locally operative highway signs or markers, or an agency's explanation of or reasons for its decision of a case, advisory ruling or opinion given upon a hypothetical or other stated fact situation or terms of an injunctive order or license.[84]

Neither party argues that the definition of "Regulation" is ambiguous. Section 9602 establishes the SEBC and its members[85] and broadly defines its powers, duties, and functions.[86] 29 *Del. C.* § 5210 further describes the SEBC's powers and duties,

---

[83] Appellees argue that the statutory interpretation issue was not raised below. Appellees' Answering Br. at 36 ("Defendants did not dispute below, nor do they now on appeal, that the SEBC is subject to the APA governing the adoption regulations."). This argument embraces an unworkable and unhelpful view of the court's role by implying that the court should ignore the plain language of the statute because the parties did not sufficiently focus on it below.

[84] 29 *Del. C.* § 10102(7).

[85] 29 *Del. C.* § 9602(a).

[86] 29 *Del. C.* § 9602(b)(1)–(5). The SEBC's powers, duties, and functions include: ". . . (2) Selection of all carriers or third-party administrators necessary to provide coverages to State employees. (3) Authority to contract on an insured or self insured basis. (4) Authority to adopt rules and regulations for the general administration of the employee benefit coverages. (5) Authority to make and enter into any and all contracts with any agency of the State, or any outside agency, for the purpose of assisting in the general administration of this section." *Id.*

which include controlling and managing the group health insurance program for

State employees and retirees.[87]

When interpreting a statute, we attempt to ascertain and give effect to the

General Assembly's intent.[88]

> First, we must determine whether the relevant statute is ambiguous. A statute is ambiguous when it can reasonably be interpreted in two or more different ways "or if a literal reading of its terms 'would lead to an unreasonable or absurd result not contemplated by the legislature.'" If we determine that a statute is unambiguous, we give the statutory language its plain meaning. If we determine that a statute is ambiguous, "we consider the statute as a whole, rather than in parts, and we read each section in light of all others to produce a harmonious whole." We presume that the General Assembly purposefully chose particular language and therefore construe statutes to avoid surplusage if reasonably possible.[89]

---

[87] Among the powers, duties, and functions the SEBC is granted, Section 5210 details that the SEBC shall: "(1) Control and management of the State employees group health insurance program provided for in this chapter. (2) Authority to establish the State employees group health insurance program on an insured or self-insured basis. (3) Selection of the carriers or third-party administrators deemed to offer the best plan to satisfy the interests of the State and its employees and pensioners in carrying out the intent of this chapter. (4) Authority to adopt rules and regulations for the general administration of the State employees group health insurance program. (5) Authority to make and enter into any and all contracts with any agency of the State, or any outside agency, for the purpose of assisting in the general administration of this chapter. . . ." 29 *Del. C.* § 5210(1)–(5).

[88] *Sussex Cty. Dep't of Elections v. Sussex Cty. Republican Comm.*, 58 A.3d 418, 422 (Del. 2013).

[89] *Id.* (footnotes omitted).

"[U]ndefined code terms must be construed according to their common and approved usage,"[90] and this Court regularly refers to dictionaries in defining code terms.[91]

In *Free-Flow*, this Court addressed the scope of the APA and recognized that not all agency actions fall within the Act.[92] Our decision in *Free-Flow* offers a helpful framework for this appeal. First,

> as a general rule, when an agency adopts a regulation, it must comply with the APA's procedures for adopting a regulation; and when an agency decides whether a named party is violating a law or regulation, it must comply with the APA's procedures for case decisions. But, when an agency carries out other functions, as when it implements a specific and detailed statutory directive, it may operate outside the scope of the APA.[93]

Second, whether an agency action is a regulation does not depend on the label given to it by the agency.[94]

---

[90] *Moore v. Wilm. Hous. Auth.*, 619 A.2d 1166, 1173 (Del. 1993).

[91] *See, e.g.*, *Id.* at 1174 (citing WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (1986) for the definitions of the words "building" and "public" to define the code term "public building").

[92] *Free-Flow*, 861 A.2d at 1236.

[93] *Id.*

[94] *Baker v. Delaware Dep't of Nat. Res. & Envtl. Control*, 2015 WL 5971784, at *13 (Del. Super. Oct. 7, 2015), *aff'd*, 137 A.3d 122 (Del. 2016) (agency action that meets the broad definition of regulation "must be subject to the rigors of the APA whether they are located in documents captioned 'Regulations' or whether they are contained in some other document"); *Christina Educ. Ass'n v. Delaware State Bd. of Educ.*, 1994 WL 637000, at *4 (Del. Super. May 25, 1994) (action designated by agency as a "calendar change" was a de facto regulation).

*Free-Flow* did not, however, further explore the meaning of "regulation," and we therefore turn to that question now. The APA's definition of "regulation" contains three parts that are relevant to the parties' dispute. "Regulation" means any [(1)] *statement of law, procedure, policy, right, requirement or prohibition* [(2)] *formulated and promulgated by an agency* [(3)] *as a rule or standard, or as a guide for the decision of cases . . .*"[95] Each of these elements must be satisfied for an agency action to be a regulation.

First, a regulation must be a "statement of law, procedure, policy, right, requirement or prohibition."[96] Appellees urge that the SEBC's selection of a Medicare Advantage plan was a "policy" because that action—if implemented—would affect many people and would be "substantively transformational."[97] Specifically, Appellees emphasize the "drastic, adverse consequences on Retiree healthcare rights" that the switch to Medicare Advantage would have, concluding that the decision therefore is a "policy."[98] But this argument raises more questions than it answers. Focusing on the effect of an agency's decision seems to us

---

[95] 29 *Del. C.* § 10102(7) (emphasis added). The parties do not substantively engage on the second part of the definition, the issue of whether the SEBC's actions were formulated and promulgated by an agency, and this factor therefore is not an element in our decision.

[96] *Id.*

[97] Appellees' Answering. Br. at 37, 39.

[98] *Id.* at 1. *See* Oral Argument at 27:28–27:58 ("It was a significant difference from Medicare. . . . [it] impose[d] a lot of rules that are in the papers about prior authorizations out of network, [] out-of-pocket expenses and things like that. This was major.").

subjective and unwieldy.  If the meaning of policy depends on an agency action's ultimate effect, the agency would be required to know and weigh from the outset the effect of any proposed action.  That standard also would require an agency to predict how different people or groups would be affected, which will vary from case to case.

Generally, a "policy" is defined as "a definite course or method of action selected from among alternatives and in light of given conditions *to guide and determine present and future decisions*" or "a high-level overall plan *embracing the general goals and acceptable procedures* especially of a governmental body."[99]  The SEBC's decision does not easily satisfy this meaning of "policy."  To the contrary, 29 *Del. C.* § 5203 expressly permits the SEBC to adopt a Medicare part C plan.[100]  This specific statutory directive, which authorizes the challenged agency action, undermines Appellees' position that this was a policy decision made by the SEBC.[101]  Instead, the SEBC selected a type of plan from a list of options chosen by the General

---

[99] Policy, *Merriam-Webster* (2024) https://www.merriam-webster.com/dictionary/policy (Mar. 14, 2024) (emphasis added).

[100] 29 *Del. C.* § 5203(a)–(b) ("(a) The basic health care insurance plan for state employees shall be equivalent to the 'minimum creditable coverage' as defined by applicable federal law and include coverage for contraceptive methods under § 5203A of this title. . . . (b) The plan shall be for regular employees and eligible pensioners under 65 years of age and for employees and eligible pensioners over 65 years of age who are not entitled to services, rights or benefits under the federal Medicare Program (U.S. Public Law 89-97, as amended) [42 U.S.C. § 1395 et seq.]; and a plan which is supplemental to Medicare parts A and B, or constructed as a plan under Medicare part C, for eligible pensioners entitled to services, rights or benefits under the federal Medicare Program.").

[101] This is consistent with *Free-Flow*, where this Court held that "[w]e disagree with the premise that all of what an agency does must culminate in a regulation or case decision." *Free-Flow*, 861 A.2d at 1236.

Assembly. *Free-Flow* establishes that "when an agency . . . implements a specific and detailed statutory directive, it may operate outside the scope of the APA."[102] Here, the actions that the SEBC took when selecting a plan arguably were consistent with *Free-Flow*'s determination of when an agency action falls outside the APA's scope. Ultimately, however, we need not determine whether the SEBC's action was a "policy" because, in any event, the challenged decision was not a "rule or standard."

The third part of the definition of "regulation" requires the agency action to be one that qualifies "*as a rule or standard, or as a guide for the decision of cases thereafter . . .*" [103] Appellees did not address in their brief and could not coherently answer at oral argument how the SEBC's action to select a Medicare plan would be used "as a guide for the decision of cases thereafter." Instead, Appellees asserted, if obliquely, that the action was a "rule or standard." Appellees did not, however, engage with the plain meaning of those words, retreating instead to their focus on the significant (negative) effects felt by State retirees as a result of the SEBC's action.

---

[102] *Id.*

[103] 29 *Del. C.* § 10102(7) (emphasis added).

Merriam-Webster defines a "rule" as "a prescribed guide for conduct or action" or a "regulating principle."[104] "Standard" is defined as "something established by authority, custom, or general consent as a model or example."[105] Both words require the agency action to guide, regulate, or act as a model for future action. The SEBC's adoption of a particular health plan permitted by statute does not meet any of these definitions. To the contrary, the adoption of a particular plan, authorized in advance by the General Assembly, does not dictate future agency action and may be revisited in the future as the SEBC deems appropriate. Because the agency action was not a "rule or standard," it was not a regulation under the APA, and the Superior Court lacked jurisdiction to stay that action under Title 29, Section 10144.

**B.    The cross-appeal challenging the Superior Court's attorneys' fee ruling is moot.**

On cross-appeal, Appellees contend that the Superior Court abused its discretion by not considering and granting an award of attorneys' fees to Appellees.[106] Specifically, Appellees argue that "by stopping [Appellants'] unilateral conversion of retirees' healthcare plan to Medicare Advantage, [Appellees] achieved a substantial common benefit that merits an award of

---

[104] Rule, *Merriam-Webster* (2024) https://www.merriam-webster.com/dictionary/rule (Mar. 14, 2024).

[105] Standard, *Merriam-Webster* (2024) https://www.merriam-webster.com/dictionary/standard (Mar. 14, 2024).

[106] Appellees' Answering Br. at 44.

27

attorneys' fees."[107]  In response, Appellants contend that Appellees' application for attorneys' fees was properly rejected by the Superior Court because Appellees never pleaded a claim for fees and thereby waived that claim.[108]  Additionally, Appellants argue that the common benefit doctrine is inapplicable.[109]  At oral argument, Appellees withdrew their common benefit argument in light of this Court's recent decision in *In re Delaware Public Schools Litigation*.[110]  As such, this opinion does not discuss the merits of that argument.

In addition to their common benefit argument, Appellees maintain that the State officials' "reprehensible conduct" supports an award of fees.[111]  In response, Appellants contend that Appellees' reliance on the bad-faith exception to the American Rule fails because Appellees cannot establish "extraordinary circumstances here, nor can they establish by clear and convincing evidence that the SEBC acted in subjective bad faith[,]" and as such attorneys' fees are not warranted.[112]

---

[107] *Id.*

[108] Appellants' Reply Br. at 33.

[109] *Id.* at 34–39.

[110] *In re Delaware Pub. Sch. Litig.*, --- A.3d ---, 2024 WL 332738 (Del. Jan. 30, 2024).

[111] Appellees' Answering Br. at 50.

[112] Appellants' Reply Br. at 39–42.

Delaware law follows the American Rule, under which litigants are generally responsible for paying their own litigation costs.[113] Under the American Rule, "a prevailing party is responsible for the payment of his own counsel fees in the absence of statutory authority or contractual undertaking to the contrary."[114] Courts recognize "limited equitable exceptions" to the American Rule, including one for a party's "bad faith" conduct throughout litigation.[115]

Here, Appellees' argument regarding bad faith is moot because fee shifting is available only against a losing party in favor of a prevailing party.[116] By reversing the decision below, fee shifting is foreclosed, and it is not necessary for this Court to engage with Appellees' bad faith arguments.

## IV. CONCLUSION

For the foregoing reasons, we reverse the Superior Court's order dated October 19, 2022 staying implementation of a Medicare Advantage Plan for State retirees and the Superior Court's May 22, 2023 order entering final judgment in this case.

---

[113] *Mahani*, 935 A.2d at 245.

[114] *Tandycrafts, Inc. v. Initio Partners*, 562 A.2d 1162, 1164 (Del. 1989).

[115] *Montgomery Cellular*, 880 A.2d at 227.

[116] *See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 245 (1975) (noting that "the general 'American rule' [is] that the prevailing party may not recover attorneys' fees as costs or otherwise" unless there is an applicable statutory authorization for such an award or the award falls within an exception to the American rule).

29